May Term,
1847.

ORTH ,
v.
JENNINGS.

*H. P. Thornton,* for the appellee.

## ORTH v. JENNINGS and Others.

*A.* sold and conveyed a tract of land to *B.* Afterwards *A.* purchased back the land from *B.,* paid him for the same, and took possession; *B.,* at the same time, delivering up to *A.* to be cancelled the deed which had been executed to him by *A.,* and which had not been recorded. No conveyance was executed by *B.* to *A.* *Held,* that the legal title to the land remained in *B.* *Held,* also, that a judgment rendered against *A.* after said deed was delivered up to him to be cancelled, was not a lien on the land.

The case of *Modisett et al.* v. *Johnson et al.,* 2 Blackf. 431, as to the liens of judgments, reviewed and confirmed.

A conveyance of real estate will, if not recorded in time, be defeated by a subsequent one, if the latter be first recorded; unless the subsequent purchaser had notice of the prior conveyance.

The statute of 1838 protecting subsequent purchasers and mortgagees against unrecorded conveyances, does not relate to subsequent judgments.

The protection of a purchaser under such judgment is the same with that of any other purchaser, dating the purchase at the time of the sale.

May Term, 1847.

ORTH
v.
JENNINGS.

APPEAL from the *Tippecanoe* Circuit Court.

SMITH, J.—This was a bill in chancery filed by *G. S. Orth* against *John Jennings* and others. The following are the material facts established by the bill, answers, and proof in the case:

Thursday, July 1.

On the 7th of *February*, 1840, *William Fryer* recovered a judgment in the *Tippecanoe* Circuit Court against *John Jennings* for 731 dollars and 41 cents; and on the 18th of *August* following, *Joseph H. Dalles* recovered a judgment in the same Court, against the same defendant, for 728 dollars and 56 cents. Executions were issued upon these judgments, and levied upon a certain tract of land as the property of the execution-defendant. The executions were returned not satisfied, the property not being sold for want of bidders. Other executions were issued and returned in the same way, until finally on the 27th of *July*, 1844, the land was sold under writs of *venditioni exponas* founded on the returns of the aforesaid executions. The complainant, who was one of the attorneys of *Fryer* and *Dalles*, in the suits upon which the judgments were obtained, became the purchaser. His bid, which was 1,000 dollars, was credited upon the executions. He paid the costs to the sheriff, but otherwise no money or other consideration but the credit passed in consequence of the purchase.

The tract of land so purchased by the complainant, was held by the execution-defendant, *John Jennings*, prior to the 4th of *September*, 1838, under a good legal title. On that date, *Jennings* sold and conveyed the land in fee-simple, by a valid deed, to *Thomas Clawson*. The latter received the possession, which he held until *December*, 1839, when *Jennings* repurchased the property from him. The consideration passing in both cases of the sale and resale, it is admitted, was fair, valid, and wholly paid; and when *Jennings* purchased the property back from *Clawson*, the former was again put in possession. At the time of the repurchase by *Jennings*, the deed he had made to *Clawson* in *September*, 1838,

had not been recorded, and it was given up by *Clawson* to *Jennings to be cancelled*, both parties supposing at the time that nothing more was requisite to revest the title in the latter.

On the 10th of *June*, 1840, *Jennings* mortgaged the land to the branch of the State Bank of *Indiana* at *Lafayette*, to secure the payment of a note given by him for the sum of 2,700 dollars; and on the 17th of *February*, 1842, *Jennings* made an absolute conveyance, in fee, of the same land to the bank in payment of 1,920 dollars, part of the mortgage-debt. The bank appears to have been induced to accept this conveyance, because there was little prospect of *Jennings* being able to pay her debt in any other way. The mortgage and deed to the bank were duly recorded—the mortgage on the 13th of *June*, 1840, and the deed on the 24th of *March*, 1842.

Until within a short period before the sale by the sheriff in *July*, 1844, it appears that *Jennings*, *Clawson*, and the bank, were all under the impression that *Jennings* had had a good legal title to the land in question. The day before the sale was to take place, however, *Levi Jennings*, who was the brother of *John*, and who had become replevin-bail for the stay of execution on the judgments, learned that the legal title had not in fact passed by the mere delivery and cancellation of the deed, and that it was still in *Clawson*. He accordingly went to the latter, and after representing to him the state of the case, as the agent of his brother, procured from *Clawson* a title-bond conditioned to execute a conveyance of the land to *John Jennings* or his assigns on or before the 1st of *September*, 1844. *Levi*, then, on the same day on which the sheriff's sale was made, carried the old deed from *Jennings* to *Clawson*, dated *September*, 1838, to the recorder's office and had it recorded. The title-bond, *John Jennings* assigned to the bank, and on the 26th of *September*, 1844, at her request, *Clawson* executed to her a conveyance of the property.

In these proceedings no intentional fraud appears to have been committed by any of the parties. When attention was attracted to the facts and the law, in reference to the situation of the legal title, each appears to have been desirous to

secure such advantages as his position placed within his reach, but there is no evidence of any improper means being resorted to for that purpose. The bank, as she alleges in her answer, "being advised that said judgments did not create a lien on said lands," was desirous to perfect her title by joining the legal title, outstanding in *Clawson*, to "the equitable title she had previously acquired." *Clawson* having previously, as he thought, parted with all his interest, was willing, in good faith, to do any thing he was informed was necessary to comply with the requisite legal forms. The interest of *Levi Jennings* was, evidently, connected with that of the execution-creditors, and *John Jennings* standing in the relation of debtor to several creditors having just claims upon him, might be desirous that his property should go to pay one rather than another, without incurring the imputation of fraud.

The questions which arise in this case depend, therefore, entirely upon the legal rights which became vested in the complainant and in the bank, by the facts which occurred at the sale and resale of the land between *Jennings* and *Clawson* in 1838 and 1839, the judgment of *Fryer* on the 7th of *February*, 1840, the mortgage to the bank on the 10th of *June*, 1840, the judgment of *Dalles* on the 18th of *August*, 1840, the deed of *Jennings* to the bank of the 17th of *February*, 1842, the title-bond to *Jennings* and his assigns of the 26th of *July*, 1844, the sale by the sheriff on the 27th of *July*, 1844, and the deed from *Clawson* to the bank of the 26th of *September*, 1844.

The prayer of the bill is, that the bank mortgage, or the lien thereby created, may be decreed not to affect the rights of the complainant; that the deed from *Clawson* may be decreed fraudulent; and for such other relief as may be just.

The Circuit Court upon the hearing dismissed the bill, and from that decision the complainant appeals.

The first question that arises in this case is, had *Jennings* an interest in the land after the resale to him by *Clawson* without conveyance, and by which resale, as it is admitted, the legal title did not pass to him, subject to execution and to the lien of the judgments of *Fryer* and *Dalles?* The decision of this Court in the case of *Modisett et al.* v. *Johnson et al.*, 2 Blackf. 431, is here directly in point, and if that deci-

sion was correct, the question must be answered in the negative. At common law equitable estates are not subject to execution, but by the statute of frauds then in force and by which this case must also be governed, it was provided that execution should be levied on all lands held in trust for the execution-debtor, and that by force and virtue of such execution, such lands should be held freed and discharged from all incumbrances of such person or persons, as should be seised and possessed in trust for the person against whom such execution should be sued. This statute was copied from the *English* statute of the same title, which had been substantially re-enacted in most of the states of the Union. It had been established by numerous decisions both in this country and in *England*, that it reached only those trusts in which the *cestui que trust* had the whole real and beneficial interest in the land. In *Modisett et al.* v. *Johnson et al.*, it was held that it only operated upon trusts expressly declared by deed, or resulting by implication of law from some deed or conveyance, and that such a trust could not arise upon a simple contract of purchase between the vendor and vendee, where one had purchased land with his own money for his own use.

The Revised Statutes of 1843, though the same general provision, that real estate held in trust shall be liable to all judgments and executions against the *cestui que trusts*, is continued, expressly enact that the interest of persons holding contracts for the purchase of lands, shall not be bound by the rendition of any judgments, and that whenever execution shall have been issued on such judgments and returned unsatisfied in whole or in part, the parties issuing out such executions may file their bills in chancery against such defendants, and the parties bound to perform such contracts, to obtain satisfaction of the sums remaining due on such judgments out of the interest of the defendants in said contracts. R. S. 1843, c. 29, ss. 1, 14. We have no reason to suppose that the legislature intended to alter materially the law as it had stood previously. It is more probable that the object was to render its provisions more definite and perspicuous. At all events, the construction given to the former statute in *Modisett et al.* v. *Johnson et al.* is here distinctly approved and incorporated into the new revision, and we

should have been extremely reluctant to unsettle the prin-
ciple understood to be established by that decision, and since
formally adopted by the statute, without the most clear and
positive conviction that it was erroneous. We are satisfied,
however, that that decision was right. The same act that
authorized executions to be levied on trust estates, provided
that all creations of trust or confidence of any lands, tene-
ments, or hereditaments, should be manifested by deed crea-
ting such trust or confidence, except that when *any convey-
ance* should be made of lands or tenements, from which a
trust should arise or result by implication or construction of
law, such trust should be of the like force and effect as if the
act had not been passed. R. S. 1838, p. 312, s. 5. It is plain
that this provision of the statute was intended to abolish
all trusts, except those created or resulting in the manner
thus specifically prescribed, that is, by deed expressly decla-
ratory of such trusts, or by conveyances from which they should
result by implication; and the subsequent section of the same
act making trust estates subject to execution, cannot be con-
strued to refer to trusts created in any other manner.

After the sale by *Clawson* to *Jennings* in *December*, 1839,
the latter must be considered as holding the land under a con-
tract to purchase, and there was no such trust created as by
the provisions of the statute above referred to, would render
his interest liable to the lien of judgments or to execution.
Upon this ground, therefore, the complainant must fail.

This question being disposed of, there is but little difficulty
in ascertaining the rights of the parties chiefly interested in
the suit. The deed from *Jennings* to *Clawson* of the 4th of
*September*, 1838, not having been recorded within twelve
months after its execution, was void by the statute as against
any subsequent purchaser or mortgagee for a valuable consi-
deration, unless it was recorded before the acknowledging or
proving and recording of the deed, conveyance, or mortgage,
under which such subsequent purchaser or mortgagee should
claim. R. S. 1838, p. 312. This provision of the statute
does not apply to judgment-creditors, and, therefore, the judg-
ments of *Fryer* and *Dalles* did not become liens in conse-
quence of *Clawson's* deed remaining unrecorded. *Sparks* v.
*The State Bank*, 7 Blackf. 469.—*Doe d. Abbott* v. *Hurd*, *Id.* 510.

But the bank purchased of *Jennings* for a valuable consideration in *February*, 1842, and *Clawson's* deed still remaining unrecorded until long after that of the bank was placed upon record, it not being averred or proved that the latter had actual notice of its existence, the bank then acquired a good title.

The subsequent transactions do not alter the positions in which the parties then stood. The sale of the property under the executions, and the purchase by the plaintiff, could not divest the bank of the title acquired by the deed of 1842. A judgment-creditor is not a purchaser within the meaning of the statute, and though it is observed in *Sparks* v. *The State Bank*, that a *bona fide* purchaser at sheriff's sale under the judgment might be protected, it would only be to the same extent that any other purchaser would be protected, dating the purchase at the time the sale took place. Such protection would not be upon the ground of a lien relating back to the rendition of the judgment, for, as we have seen, there could be no such lien; but it would be afforded ·because the purchaser at a sale under execution, would possess the same rights as a purchaser of the execution-defendant. So, the deed which the bank afterwards procured from *Clawson*, may be regarded as superfluous and unnecessary. It does not weaken the title the bank had previously acquired, nor do we perceive that it gives it any additional strength; *Clawson's* interest, if he had any, having already been lost by the failure to place his deed from *Jennings* upon record.

The decision of the Circuit Court was therefore correct.

*Per Curiam.*—The decree is affirmed with costs.

*G. S. Orth*, *A. M. Crane*, and *D. Mace*, for the appellant.
*A. Ingram*, *R. Jones*, and *R. C. Gregory*, for the appellees.