Nov. Term,
1853.

The State
Bank
v.
Macy.

The State Bank and Others *v.* Macy and Others.

Lands conveyed to a trustee to be sold and the proceeds accounted for, were, under the R. S. 1843, liable to levy and sale upon execution on a judgment against the *cestui que trust.*

*A.* being a part-owner of a tract of land, conveyed it to *B.*, to be sold by him at public auction with the residue of the tract. *A.*, at the sale, bought the whole tract, and received a title-bond from *B.* therefor. *Held,* that *A.* acquired the same title which a stranger would have acquired. *Held,* also, that his interest being that of the obligee of a title-bond, was not subject to execution.

Bill to enjoin the sheriff from levying upon and selling certain land because it was not the property of the judgment-defendant but that of third persons. *Held,* that the penalty and condition of the bond were to be regulated by s. 133, c. 46, R. S. 1843.

Wednesday,
November 30.

ERROR to the *Wayne* Circuit Court.

ROACHE, J.—This was a bill in chancery filed by the defendants in error, *Jonathan W. Macy*, administrator of *Daniel Sinks*, deceased, and *Jeremiah W. Swafford*, *Wilson Jones* and *Jacob Kimmel*, praying for an injunction to restrain the *State Bank of Indiana* and *William Baker*, the sheriff of *Wayne* county, from proceeding to sell certain real estate levied on by said *Baker*, on an execution issued on a judgment in favor of the bank.

The injunction was granted in vacation by the president judge. At the next term, the defendants below demurred to the bill, and the demurrer was overruled. They then made a motion to dissolve the injunction, which was also overruled, and the defendants declining to answer or make any further defence, the injunction was made perpetual.

The material facts, as disclosed by the bill, are as follows:

*Jacob Sinks* was seized in fee of the undivided one-half of certain real estate; but supposing himself to be seized of the whole, on the 18th day of *April*, 1844, made his will, by which he devised the whole to the said *Macy*, *Charles H. Moore* and *Robert Murphy*, his executors, directing them to sell the same on such terms and at such

time as they should think best, and to divide the proceeds of such sale, as follows: one-sixth part to *Mary Sinks*, his widow, and the remainder to his six children in equal portions, the said *Daniel Sinks*, deceased, being one of the six children.

*Jacob Sinks* died on the 1st day of *November*, 1846, and on the 24th day of the same month, letters testamentary were granted to said *Macy*, *Murphy* and *Moore*.

*Mary Sinks*, the widow of said *Jacob*, was seized in fee in her own right, of the undivided one-half of the said real estate, of the whole of which her said husband supposed himself to be the owner, and being so seized, died on the day following her husband's decease, leaving the same children and heirs to her estate left by her husband.

After the death of said *Mary Sinks*, on the 23d day of *November*, 1846, all the adult heirs, for the purpose of enabling the executors to sell the entire title in said real estate, joined in making a deed in fee simple to said executors, for the undivided half thereof which had descended to them as heirs of *Mary Sinks*, their mother, in trust, to be by them sold, and the proceeds distributed in the manner prescribed by *Jacob Sinks's* will.

On the 10th day of *March*, 1847, the executors accordingly sold said real estate, at public sale, to the said *Daniel Sinks* (one of the six children and heirs of the testator) for 8,015 dollars, and gave him a title-bond for a conveyance, to be made on full payment of the purchase-money.

Said *Daniel*, prior to his death, paid 4,000 dollars of the purchase-money to the executors, leaving the balance unpaid at the time of his death, which occurred on the 25th day of *November*, 1849. On the 11th day of *December*, 1849, letters of administration were granted on his estate to the said *Macy*. The administrator filed in the *Wayne* Probate Court his petition, alleging the insolvency of the estate of *Daniel Sinks*, and such proceedings were had in said Court on such petition, that on the 12th day of *March*, 1850, he sold said real estate to the complainants, *Swaf-*

ford, Jones and Kimmel for 6,600 dollars, on the terms prescribed by the Probate Court, to-wit, one-third cash down, and the balance in two equal instalments of nine and eighteen months. The purchasers complied with the terms of the sale.

On the 28th day of August, 1848, the State Bank of Indiana recovered a judgment in the Wayne Circuit Court against the said Daniel Sinks and others for 1,618 dollars and 8 cents, upon which an execution issued on the 5th day of November, 1849, by virtue of which, Baker, the sheriff of said county, on the 5th day of October, 1850, levied on the interest of Daniel Sinks in the said real estate, and advertised the same to be sold on the 2d day of November, 1850. That the bank insists that the said Daniel was seized of the undivided one-sixth part of said real estate at the time of the rendition of her judgment against him, and that it was subject to sale under the said execution. That the complainants, Jones, Swafford and Kimmel were ready to pay the balance of the purchase-money so soon as the questions affecting the title could be settled.

Prayer for an injunction.

The will of Jacob Sinks, deed of trust, and some other documents not necessary to be mentioned here, were made exhibits.

As there was no answer or evidence, the case stands on the bill and accompanying exhibits. The question they raise for consideration is, Had Daniel Sinks an interest in said real estate at the date of the rendition of the judgment in favor of the State Bank, and of the levy of the execution, subject to be seized and sold on such execution? In other words, What was the nature and extent of the interest of Daniel Sinks in the said real estate from the 28th of August, 1848, the date of the rendition of the judgment of the bank, to the 5th day of October, 1850, the date of the levy of the execution?

By the death of his mother, Mary Sinks, he became the owner in fee, by descent, of the undivided one-twelfth part of the real estate. On the 23d of November, 1846, he conveyed all his interest in the land to trustees, in

Nov. Term,
1853.

THE STATE
BANK
v.
MACY.

trust, to convert the realty into money, and account for the proceeds. From anything appearing in the record, he had at that time an unquestionable right, as against the bank, to make such conveyance.

This, however, left in him an estate which was subject to levy and sale on execution. R. S. 1843, p. 453, ss. 1 and 2. That estate remained in him until the 10th of *March,* 1847, when the trustees, who were also the executors, made a sale of the land in pursuance of the deed of trust.

Did the fact that *Daniel Sinks* was the purchaser, change the legal effect of the sale? If the sale had been made to a third person, it would have divested *Daniel Sinks* of any title he had previously held in the land, and converted it into an interest in its proceeds alone. The trustees, in whom the legal title still continued, would have held it in trust, not for *Daniel Sinks,* but for such purchaser. The sale would have been an execution of the trust, the contemplated and necessary consequence of which was the divesting of the entire interest of the *cestui que trust. Daniel Sinks* would then, from the date of such sale, have had no interest in the land subject to execution.

It remains to be considered, whether the *cestui que trust,* who himself becomes the purchaser, acquires a title different from that which would be acquired by a stranger under such sale. He bought at public auction, entering into competition with all other bidders, and was required to, and did comply with all the terms of the sale, and received a title-bond for a conveyance upon full payment, precisely as a stranger would have done. It would seem to follow as an inevitable consequence, that he acquired the same title and right which a stranger would have acquired. We can perceive no distinction between the cases. His interest in the land ceased to be that which had descended to him from his mother. That had been divested by the sale made by the trustees in pursuance of the deed of trust. By that sale he acquired a new and different interest, derived alone from his purchase from

Nov. Term,
1853.

THE STATE
BANK
v.
MACY.

the trustees. That was the equitable interest of the obligee of a title-bond, the obligor holding the legal estate, subject to his equitable right to a conveyance upon full payment. Such an interest was not subject to execution. *Modisett* v. *Johnson*, 2 Blackf. 431.

We have therefore come to the conclusion that *Daniel Sinks* had not such an interest in that portion of the real estate which descended to him from his mother, *Mary Sinks*, as to entitle the bank to levy her execution upon it.

It is also contended that the will of *Jacob Sinks* did not vest the fee of his real estate in his executors, but only contained a direction to them to sell, and that consequently, the one undivided sixth of his half thereof, or one-twelfth of the whole, vested by descent in said *Daniel*.

It is unnecessary to examine this point, as its decision cannot in any way affect the decision of the cause.

By his deed of trust, said *Daniel* conveyed all his interest whatever in the real estate to the trustees. If the provision of the will was a devise of the fee to the executors, of course he never had any interest in that twelfth. If it was not, and the fee descended, the reasoning as to the interest which he took as the heir of *Mary Sinks* is applicable, and shows that his leviable interest was divested before the rights of the bank accrued.

We have come to the conclusion, therefore, that *Daniel Sinks* had no interest in said real estate subject to levy and sale under the execution in favor of the bank, and that the Circuit Court, in making the injunction perpetual, was right.

Whether the bank might not, by her bill in chancery, have compelled the application, upon her judgment, of such an amount of the purchase-money due from *Swafford, Jones* and *Kimmel*, as corresponded to the interest which vested in said *Daniel* by descent, is not raised by the pleadings, and is not before us for consideration.

The plaintiffs in error urge the reversal of the decree below, on the further ground that the bond given by the defendants, who were the complainants below, on the granting of the injunction, is insufficient, both in the

amount of the penalty and the condition. It is not material to the decision of this case whether the bond was sufficient or not; for the decree of the Circuit Court being affirmed, the party can sustain no injury. But as the point was pressed by counsel, and may frequently arise in practice, it is deemed advisable to settle it.

Nov. Term, 1853.

THE STATE BANK v. MACY.

The bond required by the judge on granting the injunction was in the penalty of 1,000 dollars, conditioned for the payment of all damages and costs, &c. This was in accordance with the requirements of s. 133, c. 46, R. S. 1843.

The plaintiff in error contends that the bond should have been in accordance with the provisions of s. 130 of the same chapter, which provides that—"No injunction shall be granted to stay proceedings after judgment, in any personal action, unless the complainant shall file bond in the proper clerk's office, with surety to be approved by the court, judge or judges, granting the injunction, in a penalty sufficient to secure the payment of such judgment, interest and costs, and also the damages and costs which may be awarded by the court, if the injunction be dissolved," &c.

Section 133, under which the bond was filed, prescribes that "in all other cases not specified in the preceding sections, the party obtaining an injunction shall give bond to the adverse party affected thereby, with sureties, and in such penalty as may be required and approved by the court, judge or judges allowing the same, with condition for the payment of all damages and costs which may accrue by reason of such injunction."

Section 130 was manifestly intended to embrace those cases where it is sought to stay some process taken by the party for the enforcement of the judgment. The complainants in the present case ask for no stay of process. They do not ask to have the execution suspended. They only seek to prevent the levy of the execution on property not subject to execution. It leaves the judgment intact and the plaintiff at liberty to resort to any legal process for its enforcement. The prayer is, that the

Nov. Term, plaintiff shall be enjoined from levying upon and selling
1853. certain specified property, because it is not the property
Cox of the judgment-defendant, but the property of third per-
v. sons. The effect of the injunction, when granted, is not
O'Riley. to stay any legal "proceedings" for the enforcement of
the judgment.

It was proper, therefore, that the penalty of the bond
should be fixed by the judge granting the injunction, and
that it should be conditioned for the payment of such
damages and costs as should accrue by reason of such
injunction.

*Per Curiam.*—The decree is affirmed with costs.

*J. S. Newman* and *J. P. Siddall,* for the plaintiffs.

*J. B. Julian,* for the defendants.