May Term,
1855.

DAVIS
v.
CUMBER-
LAND.

Friday,
June 8.

———————————

DAVIS and Another *v.* CUMBERLAND and Others.

*A.* executed a title-bond to *B.* conditioned for the conveyance of a town-lot upon full payment of the purchase-money. *C.* having loaned to *B.* money to complete the payment, received from him an assignment of the bond, by way of security, and afterwards received a deed from *A.* *B.* having erected buildings on the lot, the mechanics instituted legal proceedings to enforce their liens. *C.* was a party. The Court decreed that the property should be sold and the proceeds applied, first to the discharge of the debt to *C.*, and next to the satisfaction of the mechanics' liens. *B.*, after the decree and before the sale, assigned his interest in the lot to *D.*, who bid off the property at a sum exceeding the amount of the decree, and the sheriff returned to *D.* the surplus. Before the assignment to *D.*, *E.* and others having recovered judgments before a justice of the peace, filed transcripts thereof in the clerk's office to bind said real estate, and *D.* and the sheriff were notified of the fact before the sale. *B.* was insolvent.

*Held,* that the transcripts never became a lien upon the lot.

*Held,* also, that *E.* and others had no equitable claim upon said surplus.

*Held,* also, that the surplus was properly delivered by the sheriff to *D.*

APPEAL from the *Montgomery* Circuit Court.

GOOKINS, J.—This action was brought by *Cumberland* and others against *Ramey*, the sheriff of *Montgomery* county, and *Davis*, by which, as junior judgment-creditors of one *Minick*, they sought to recover an overplus which

said sheriff had received on an execution against *Minick*, and which he had paid to *Davis*, as *Minick's* assignee. The following are the facts:

*Minick* held the equitable title to two lots in *Canby's* addition to the town of *Crawfordsville*, the legal title being in *William Twining*. *S. C. Willson* loaned *Minick* the money to pay *Twining* for the lots, and took an assignment of *Twining's* obligation for a conveyance, as a security for its repayment. *Willson* received a conveyance from *Twining* for the lots, which he held subject to *Minick's* right to a conveyance, whenever he should refund the money loaned. *Minick* having erected a house on the lots, *Epperson* and others joined in a bill to enforce several mechanics' liens against the property, which was pending at the *September* term, 1851, of the *Montgomery* Circuit Court, when *Willson*, on his petition, was admitted a defendant, who set up his claim as a lien for the purchase-money, prior to that of the complainants. A decree was rendered giving him priority; the amount of the several liens was fixed by the decree; and the property ordered to be sold on a credit of six months, in default of payment, taking from the purchaser a note with security.

On the 27th of *January*, and the 7th of *February*, 1852, *Cumberland*, *Collins* and *Sperry*, the appellees, obtained judgments against *Minick* before justices of the peace, transcripts of which they immediately entered in the clerk's office, with a view of securing liens upon his real estate.

On the 24th of *February*, a special execution was issued upon the decree, to *Ramey*, the sheriff of said county.

On the 8th of *March*, *Davis* purchased the property from *Minick*, for which he agreed to pay the amount of the decree, and about 31 dollars, arrearages of taxes on the property, and 42 dollars in money, which he paid to *Minick*. *Minick*, at the same time, gave *Davis* an instrument of writing, which states that the amount which would be due to the several claimants under the decree, on the 27th day of *March*, (the day the sheriff was to sell,) would be 1,276 dollars and 64 cents, and directing the sheriff to pay the overplus to *Davis*.

On the 27th of *March*, the sheriff sold the property for 1,460 dollars, and *Davis* became the purchaser, for which sum he gave his note to the sheriff, due six months after date, with security, which exceeded the amount due on the execution by about 148 dollars. *Ramey* did not demand this balance from *Davis*, but surrendered him the note, conceiving, as he says in his answer, that he was entitled to the overplus, as the assignee of *Minick*.

The complaint alleges that the arrangement between *Davis* and *Minick* was made to enable *Minick* to defraud his creditors, which *Davis* denies. The same charge is made and denied as to *Ramey*.

There is no extrinsic evidence of fraud in the case. It appears from the testimony of *Minick*, and of several other witnesses, that he had made various attempts to sell his property for enough to pay the demands against him, including the plaintiffs', in which he had been unsuccessful. He offered the property to *Winn* for 1,600 dollars, and *Winn* offered him 1,400 dollars for it. He concluded a treaty with *Linn* for the sale of the property, who was to pay the decree and the plaintiffs' judgments, but the treaty was broken off by the discovery of the claim for taxes spoken of.

*Minick* says he had no intention to defraud his creditors by the sale to *Davis*, but that it was to prevent a sacrifice of the property, apprehending it would not probably produce at a forced sale as much as *Davis* was to pay for it.

*Willson*, who was a witness for the plaintiffs, testifies that at the time of *Davis'* obtaining from *Minick* the order for the overplus, he applied to him for a conveyance of the property, which he declined to make, because he held the property in trust, and because of the plaintiffs' judgments. *Sperry*, one of the plaintiffs, was present, and bid at the sheriff's sale.

Upon this state of facts the Circuit Court gave judgment for the plaintiffs against *Davis* and *Ramey*, for the amount of their claims against *Minick*, which were less than the overplus before mentioned.

The only question, as we conceive, arising upon this record, is, whether the plaintiffs, by the filing of the transcripts of their judgments in the Circuit Court, acquired liens upon the lots in question. The appellees do not claim, as we understand them, that by *Minick's* purchase from *Twining* he acquired any title upon which a lien could attach. Since the case of *Modisett* v. *Johnson*, 2 Blackf. 431, it has been considered the settled law in this state, that a judgment is no lien upon land which the debtor holds by bond conditioned for the execution of a title on payment of the purchase-money, though he had taken possession, and paid the money, before the rendition of the judgment. That case has been repeatedly reviewed and steadily adhered to. *Orth* v. *Jennings*, 8 Blackf. 420.— *Doe* v. *Cutshall*, 1 Ind. R. 246.—*Dickerson* v. *Nelson*, 4 *id.* 160.

But it is insisted that the decree which subjected the lots to sale, as the property of *Minick*, invested him with the legal title. The argument is, that the decree divested *Willson* of the legal title, and reduced his estate in the land, in law, to what it was before, in equity, a simple lien, or mortgage, and that as the title could not be in abeyance, it must have been vested in *Minick*, who had the right to redeem. We can not subscribe to this doctrine. The decree did not profess to transfer the title; and there was no conveyance. We will take the illustration used by the appellees. They ask: " Suppose *Minick* had paid the decree without sale, in whom would the legal title have been ?" And they answer: " It could not have been in *Willson*, because he had surrendered it by taking a decree for his money; not in *Twining*, because he had conveyed it to *Willson;* and it must therefore have been in *Minick*, because he had purchased and paid for it."

The mistake we conceive to be in assuming that the holder of the legal title, by taking a decree for his money, has parted with it. Suppose he had obtained the ordinary decree to enforce a vendor's lien, (and such, in fact, was this decree as between *Willson* and *Minick*,) and it had been afterwards paid, would the case have been different ?

We suppose that a vendor parts with none of his rights until payment, and when that is made, the purchaser is in the position contemplated in the case of *Modisett* v. *Johnson, supra:* he is in possession, and has paid the purchase-money, and has a right to call for the legal title, but as yet has no estate upon which a judgment-lien can attach. No authorities have been shown to the effect that a proceeding to enforce a lien prosecuted to final decree, is a transfer of the legal title, and we are not aware of any.

Another position assumed by the appellees, is, that supposing they had no lien, still having obtained a judgment and done all they could to enforce their claim, they can reach this money as equitable assets. They allege that *Minick* had no property, and that *Davis* and the sheriff knew of their judgments, and these allegations, not being denied by the answers, are taken as admitted. But we do not conceive that the mere circumstance that *Minick* was insolvent, and that his indebtedness to the plaintiffs was known, gave them any equitable claim upon the fund, even if it had not been assigned to *Davis*. We do not see but that the sheriff would have been as much bound to pay the overplus to any other creditor as to the plaintiffs. Unless some legal steps were taken, to arrest the money in his hands, he would have been bound to pay it to *Minick*, or to his assignee. The fund, however, had been assigned to *Davis* long before any steps were taken by the plaintiffs to reach it, and we do not perceive that they have any legal or equitable claim upon it.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with instructions to the Circuit Court to render judgment for the defendants.

*A. Thomson, B. T. Ristine* and *I. Naylor,* for the appellants.

*S. C. Willson* and *J. E. McDonald,* for the appellees.