Parker v. Pierce.

---

## Parker v. Pierce *et al.*

1. EVIDENCE: LEGAL TITLE: ONUS. The burden of proof is upon a party attempting to overturn a legal title; and the evidence offered for this purpose must be clear, satisfactory and conclusive, and not made up of loose and random conversations..

2. LIEN: PRIORITIES. The lien of a judgment creditor is not entitled to preference over the prior equities of unrecorded conveyances:

3. SAME: PURCHASER AT JUDICIAL SALE: QUERE. Whether the purchaser at an execution sale takes the estate charged with the equities and secret trusts which may exist against the judgment debtor?

*Appeal from Clinton District Court.*

MONDAY, JUNE 6.

THE plaintiff claims that prior to July 6, 1840, one Addison Philleo of Galena, Illinois, employed William Hogan to locate, and improve a "claim" for him, on the north half of section twenty-nine, in township eighty-two,

north of seven, east, in Clinton county, Iowa; that said claim and improvement were made accordingly, and while in possession thereof, and on the date aforesaid, the said Philleo, by Hogan, made an agreement with the defendant, Elijah Buell, to furnish the money and to enter the land at the United States Land Office, for the one undivided half thereof; that Buell gave his bond under said agreement, as follows: "It is understood that E. Buell is to buy, at this land sale, the north half of section 29-82 N. and 7 E., and deed to William Hogan the undivided half of the same, in consideration of certain agreements made; on steamer Pike, at 3 o'clock P. M., 10th July, 1840.

"D. WARREN."                     "ELIJAH BUELL."

The plaintiff claims that this obligation was given to Hogan, as agent, and in trust for Philleo; and that at the time the same was executed, said Hogan wrote the following indorsement on the back thereof: "For and in consideration of the sum of one hundred and twenty-five dollars to me paid, I hereby transfer all my right, title, claim, &c., in and to the within named land, to Addison Philleo, as witness my hand and seal this 11th July, 1840.

"WM. HOGAN."   [Seal.]

The plaintiff further claims that in 1841 said Philleo died, leaving an infant son, named Addison Philleo, jr., as his only heir-at-law; and that in May, 1861, said heir, having arrived at age, conveyed by quit-claim all his interest in said land to plaintiff, who claims to be in possession of part thereof, by his tenant. The petition alleges that in October, 1840, the defendants Daniel H. Pierce, Jonathan L. Pierce, and Jonathan L. Pierce, jr., recovered judgment in the Clinton County District Court against William Hogan, for about forty dollars, costs of suit, upon which execution was issued, and said land was sold and conveyed to Daniel H. Pierce, as the property of William Hogan; that afterwards, and in April, 1843, in a suit in equity in

Parker v. Pierce.

the District Court of Clinton county, brought by Daniel H. Pierce against William Hogan and Elijah Buell, a decree was rendered, ordering and adjudging that Elijah Buell convey the legal title to said undivided half of said land to Daniel H. Pierce, as owner thereof by his purchase, under the judgment aforesaid. The deed was made accordingly, and by agreement between Pierce and Buell, the land was divided, and each conveyed to the other by quit-claim, distinct parcels thereof in severalty. The petition further alleges that all the defendants (over thirty in number) are in possession, or claim title to portions of said real estate, which has been laid off into lots, and is situated within the corporate limits of the city of Lyons.

The defendants (except Buell) answer, denying the title and possession of plaintiff, and deny also, that Philleo ever owned the said real estate or claim, or that Hogan was his agent, or received the title bond in trust for Philleo, and claim that Hogan held the same in his own right. They severally claim to be purchasers of their respective portions for full and valuable consideration, without notice of any claim by Philleo or the plaintiff, and they severally deduce title of record to themselves under the execution sale and decree as aforesaid. The court below dismissed the petition, and plaintiff appeals.

*Grant & Smith* for appellant, cited *Kierstead* v. *Avery*, 4 Paige, 14; *Mooney* v. *Dorey*, 7 S. & M., 22; *Dunlap* v. *Brownell*, 5 Id., 710; 3 Dessaus., 75; 2 Johns. Ch., 50; *Ruthford* v. *Green*, 2 Id., 122; Ad. Eq., 149, marg.; *Buchan* v. *Sumner*, 2 Barb. Ch., 165; 4 Kent., 437; *Watkins et al.* v. *Warsal*, 15 Ark., 94.

*A. R. Cotton* and *James McCoy* for the appellee, cited 2 Lead. Eq. C., pt. 1, p. 75; *Jackson* v. *Town*, 4 Cow., 599; *Jackson* v. *Post*, 9 Id., 120; *Jackson* v. *Chamberlain*, 8

Wend., 620; *Waldo* v. *Russell,* 5 Mo., 387; *Dew* v. *Rick-man,* 1 Green., 43; *Scribner* v. *Lockwood,* 9 Ohio, 184; *The Ohio Life Insurance Company* v. *Ledyard,* 8 Ala., 866; *Orth* v. *Jennings,* 8 Blackf., 420; *Heister* v. *Fortner,* 2 Burr., 40; Hill Trustees, 269, note, and the cases there cited.

COLE, J.—I. The first question presented by the transcript in this case is one of fact rather than of law. It is this: Was Philleo the owner of the "claim," and did Hogan receive the obligation of Buell as agent of, and in trust for, Philleo? There is no written evidence offered of Philleo's title to the "claim," and although it is sought to be proved that he purchased it from one Hanna, yet no conveyance is shown nor any witness produced who ever saw such conveyance. His title to the claim rests wholly in parol, so far at least as the evidence in this case discloses.

Nor is there any witness introduced who testifies to, or professes to have, any personal knowledge of any such purchase of the claim or ownership thereof by Philleo. The only testimony tending to show ownership of the claim in Philleo, is the declaration of Philleo, Hanna and Hogan, made more than twenty years before the beginning of this suit, and testified to by witnesses, from twenty-one to twenty-five years after they profess to have heard them, and no two of the witnesses testify to the same conversation. One witness testifies that Philleo told him that he had bought the claim, and then owned it; one witness, that Hanna told him that he had sold the claim to Philleo, and one witness that Hogan never claimed the land, only as agent of Philleo. This is, in substance, the testimony on the question of the ownership of the claim, and leaving out of view the doubt as to competency, it would certainly be very weak testimony, upon which to base a judgment of eviction against innocent purchasers in good faith, for valuable consideration, who claim, under a title deducible

Parker v. Pierce.

of record from the government down to themselves, and under which they, and their grantors have held possession for about twenty years.

It devolves upon the plaintiff to establish the title of Philleo to the claim, for upon this is based his right to the property, and the whole theory of this case, which is, that Hogan held the bond of Buell in trust for him. The plaintiff not only has the burden of proof, but where he seeks to overturn the legal title (as in this case), the proof should be clear, satisfactory and conclusive, and not made up of loose and random conversations. *Boyd* v. *McLean*, 1 Johns. Ch.; 582; Hill on Trustees, 94; *Noe* v. *Noe*, 1 Iowa, 423; *Corbit* v. *Smith*, 7 Iowa, 80; *Cooper* v. *Skeel et al.*, 14 Iowa 578.

Again, did Hogan receive the obligation of Buell, as agent of Philleo, and in trust for him? The evidence upon this branch of the question is quite as indefinite, uncertain and unsatisfactory, as upon the others. It consists of the declarations of Philleo and Hogan. Against this testimony we have the clear and direct language of the obligation itself, which is to Hogan individually,—the assignment of the obligation by Hogan to Philleo, not in execution of the supposed trust, but " in consideration of one hundred and twenty-five dollars to me paid "—the possession of the land by Hogan as owner and consistent with the bond, and the fact that neither Philleo in his lifetime, nor his executors or heirs, after his death, ever set up any claim to the land. There is one other fact which is entitled to some weight in determining this question. The original obligation by Buell to Hogan, to convey the undivided half of said land, together with the assignment on the back thereof, was, by order of the Court below, sent to this Court for inspection. The bond is dated July 10, 1840, and the assignment July 11, 1840, and a careful and critical examination of the document by each

member of the court has satisfied us beyond a doubt that
the assignment was made long after the bond—doubtless
many years.   And, further, the subscribing witness to
the bond testifies that he always understood that it was
Hogan's own property, and that Hogan did not hold it in
behalf of any one, and the witness never heard Philleo's
name mentioned in connection with it.   So far as the tran-
script discloses there was no effort made by the plaintiff to
procure the testimony of Hogan, who is shown by the
evidence to have been living in Galena, up to a few years
before the commencement of this suit, and by whom the
plaintiff could establish the trust, if it had any existence
in fact.   In view of all the evidence in the case, which has
received our careful consideration, we feel quite clear in
holding, under the rule before stated, that the plaintiff
has failed to show that Philleo was the owner of the
"claim," or that Hogan received the obligation of Buell
in trust for Philleo.

II. In view of the foregoing conclusion of fact, it be-
comes unnecessary to decide the second point made by
counsel in the argument of the cause, to wit, whether a
purchaser at execution sale takes the estate charged with
the equities and secret trusts which may exist as against
the judgment debtor.   A creditor who obtains a judgment,
which takes effect as a lien on the lands of the debtor, is
not regarded in the light of a purchaser, nor is he entitled
to a preference over prior equities and unrecorded convey-
ances. 2 Lead. Cases in Equity, 108, citing *Jackson* v.
*Town*, 4 Cow., 599; *Jackson* v. *Post*, 9 Id., 120; and 8
Wend., 588; *Buchan* v. *Sumner*, 2 Barb. Ch., 165; *White*
v. *Denman*, 1 Ohio St., 110; *Coleman* v. *Cock*, 6 Rand., 618;
*Ash* v. *Livingston*, 2 Bay, 80; *Massey* v. *McIlvaine*, 2 Hill
Ch., 426; *Orth* v. *Jennings*, 8 Blackf., 420; *Jackson* v. *Du-
bois*, 4 Johns., 216; *Cover* v. *Black*, 1 Barr, 493; *Shryock*
v. *Wagoner*, 4 Casey, 430; *Watkins* v. *Wassell*, 15 Ark., 73;

Parker v. Pierce.

see also *Boyd* v. *Ellis*, 11 Iowa, 97; *Bell* v. *Evans*, 10 Id., 353; *Seevers* v. *Delashmutt*, 11 Id., 174; *Rogers* v. *Gibson*, 4 Yeates, 111; *Heister* v. *Fortner*, 2 Binney, 40; *Bank of Muskingum* v. *Carpenter*, 7 Ohio, 21; *Lake* v. *Doud*, 10 Ohio, 415.

But whether a purchaser, at a sale under execution, issued upon such judgment, will take the land discharged of every claim or title, whether arising under an unregistered deed, or a mere equity, the same as a purchaser for value, without notice directly from the debtor, is a question upon which there is a conflict of authority. It has been held by the following authorities that an equitable interest in land will follow the legal title into the hands of a purchaser under execution. *Freeman* v. *Hill*, 1 Dev. & Bat. Eq., 389; *Polk* v. *Gallant*, 2 Id., 395; *Rutherford* v. *Green*, 2 Iredell Eq., 122; *Freeman* v. *Mebane*, 2 Jones Eq., 44; *The Bank of South Carolina* v. *Campbell*, 2 Rich. Eq., 179; *Williams* v. *Hollingsworth*, 1 Strobhart's Eq., 103. But the weight of authority, it is said by the learned editors of Leading Cases in Equity is the other way. *Jackson* v. *Chamberlain*, 8 Wend., 620; *Waldo* v. *Russell*, 5 Missouri, 387; *Den* v. *Rickman*, 1 Green, 43; *Scribner* v. *Lockwood*, 9 Ohio, 184; *The Ohio Life Insurance Company* v. *Ledyard*, 8 Ala., 866; *Orth* v. *Jennings*, 8 Blackf., 420; *Heister* v. *Fortner*, 2 Binney, 40; *Mann's Appeal*, 1 Barr., 24; *Killam* v. *Janson*, 5 Harris, 467; *Wood* v. *Chapin*, 3 Kern., 509.

In the last case cited, it was held that the rule applies even where the judgment creditor becomes the purchaser.