Filed June 6, 1884.

———————◆———— ——

No. 11,235.

MAXWELL v. VAUGHT.

JUDGMENTS.—*Lien.*—*Priority.*—*Trust.*—*Lands.*—*Execution.*—Judgments are by statute liens on lands held in trust for the judgment debtor in their chronological order, and a junior judgment obtains no priority by a decree in equity subjecting the lands to execution to satisfy it, where the plaintiff in the senior judgment is not a party.

From the Shelby Circuit Court.

*E. P. Ferris, W. W. Spencer* and *J. S. Ferris,* for appellant.
*J. B. McFadden,* for appellee.

BICKNELL, C. C.—The appellant brought this suit against the appellee. The complaint was in two paragraphs. The first demanded the possession of land, damages for its wrongful detention, and that the title thereto be quieted. The second paragraph demanded partition.

The answer was the general denial.

The issues were tried by the court, who made a special

Maxwell *v.* Vaught.

finding of the facts and stated conclusions of law thereon in
favor of the defendant, the plaintiff excepted to the conclu-
sions of law. Judgment was rendered for the defendant;
the plaintiff appealed. Error is assigned upon the conclu-
sions of law.

The special findings were substantially that James Yohe
owned the land in dispute, and exchanged it with Jacob Half-
acre for other land; that Halfacre made him a deed and put
him in possession of the other land; that Halfacre took pos-
session of the land in dispute, but Yohe, having no other in-
terest in it, retained the title thereto, and agreed that when-
ever Halfacre should find a purchaser, he would convey it to
such purchaser for the benefit of Halfacre; that Halfacre,
having made valuable improvements on the land in dispute,
died in possession of it in September, 1878; that said ex-
change of lands was made in December, 1876; that by his
last will Jacob Halfacre devised to his son Philip Halfacre
the undivided one-fifth of said land, and devised the re-
mainder to other devisees, and that from December 6th, 1876,
to the death of Jacob Halfacre in September, 1878, said Yohe
held said land in trust for Jacob Halfacre, and afterwards
held it in trust for the benefit of said Philip Halfacre and
said other devisees, and that Yohe had no other interest in
said land than as such trustee; that said Philip Halfacre had
remained insolvent since his father's death, and had no prop-
erty except his interest as such devisee; that in March, 1872,
the plaintiff and William H. Fry and William B. Thurston
recovered a judgment against said Philip in the court of
common pleas of Shelby county for $324.50, of which judg-
ment the plaintiff, before March 15th, 1880, became sole
owner; that on June, 28th, 1880, the Shelby Circuit Court,
after due notice to Philip Halfacre, and on proof that said
judgment was wholly unpaid, gave leave to issue execution
thereon, and that in said proceeding said court rendered judg-
ment that said undivided one-fifth of said land was held in
trust by said Yohe for said Philip Halfacre from the time of

his father's death in September, 1878, and was subject to the lien of plaintiff's said judgment; that the plaintiff afterwards issued execution on said judgment, which was levied on said undivided one-fifth, and the said one-fifth was duly sold by the sheriff to the plaintiff for $300, and the sheriff made a deed to the plaintiff therefor on the 13th of January, 1883; that the rents and profits of the eighty acres, of which said one-fifth is part, are of the value of $150 for each of the last two years; that on July 2d, 1876, Alfred C. Thompson obtained a judgment against said Philip Halfacre, before a justice of the peace, for $41.33, and on the 22d of January, 1878, Peter Wallace recovered a like judgment for $75.45, and assigned it to said Alfred C. Thompson, who filed a transcript of each of said judgments in the clerk's office of said Shelby county, which were there duly recorded and docketed, together with certificates of the proper officers, showing that executions on said judgments had been duly issued and duly returned *nulla bona*; that Harvey C. McClelland, on December 6th, 1878, obtained a judgment in the Johnson Circuit Court against said Philip Halfacre for $408.08, a duly certified transcript of which was duly filed and recorded in said Shelby county; that in December, 1878, said Alfred C. Thompson filed in the Shelby Circuit Court his complaint against said Philip Halfacre and others to subject the equitable interest aforesaid of said Philip Halfacre to execution and sale to satisfy his judgments aforesaid, the said Thompson averring that he had an equitable lien on said undivided one-fifth part; that on the 19th of December, 1878, said Harvey C. McClelland filed a like complaint upon his judgment aforesaid; that upon said complaints the said court rendered separate judgments in favor of said Thompson and in favor of said McClelland, and that they each had the lien they claimed on the equitable interest of said Philip Halfacre in said one-fifth of said eighty acres, and that said equitable interest should be sold to satisfy said liens; that under said judgments the sheriff duly sold said equitable in-

terest to Alfred C. Thompson, who afterwards assigned his certificate of sale to Gabriel M. Overstreet, who obtained the sheriff's deed for said equitable interest on the 7th of September, 1880, which afterwards, by deed, was conveyed to the defendant in the present suit, William M. Vaught; that in the plaintiff Maxwell's suit aforesaid to establish said trust, neither Alfred C. Thompson nor Harvey McClelland were parties, and that in said suits of Alfred C. Thompson and Harvey McClelland to subject said equitable interest, said John M. Maxwell was not a party.

The conclusions of law upon the foregoing facts were:

1. That said equitable interest of said Philip Halfacre was never subject to execution to satisfy the judgment held by the appellant John M. Maxwell, and that said judgment was not a lien on said equitable interest.

2. That the said judgments of Thompson and McClelland did become liens upon said equitable interest, and that such interest was properly sold to satisfy said judgments.

3. That upon such last mentioned sale said Philip Halfacre was divested of all his said equitable interest except the right to redeem the same from said sale.

Upon an exception to conclusions of law upon facts specially found the facts are taken to be correctly found for the purpose of determining the validity of the exception. *Gregory* v. *Van Voorst*, 85 Ind. 108. Where the facts are not correctly found, the remedy is a motion for a new trial, for the reason that the finding is not sustained by sufficient evidence. *Cruzan* v. *Smith*, 41 Ind. 288. In this case the court, after finding that one undivided fifth of Jacob Halfacre's eighty acres was devised by him to Philip Halfacre, and that the remaining four-fifths were devised by said Jacob to his other descendants, continues thus: "And that said real estate was held by the said James Yohe in trust for Jacob Halfacre from the 6th day of December, 1876, to his death in September, 1878, and from that date the same was held by said Yohe, in trust for the benefit of Philip Halfacre and the other legatees

under the will of Jacob Halfacre, deceased, and that said James S. Yohe had no other interest in said land than as trustee for said legatees."

Such a finding means that the trust was a valid trust. Then the question arises, what rights have the judgment creditors of the *cestui que trust* against lands thus held in trust for him? The law in force while the property in controversy was thus held in trust was the same as the law now in force. It provided that all lands of the judgment debtor, whether in possession, remainder or reversion, and all lands, or any estate or interest therein, holden by any one in trust for, or to the use of, another, shall be liable to all judgments, and to be sold on execution against the debtor owning the same, or for whose use the same is holden. R. S. 1881, section 752. Ever since the enactment of this statute in 1852, lands held in trust have been liable to sales on execution issued on judgments against the *cestui que trust*, and where there are several such judgments the oldest judgment is the first lien.

The special finding shows that the date of the appellant's judgment against the *cestui que trust* was March 6th, 1872; that in June, 1880, he obtained a decree of court, declaring that the land in controversy was held in trust for said Philip Halfacre, and also obtained leave of court to issue execution thereon, which was issued in December, 1881, and that in January, 1882, the appellant, at the execution sale, bought said land so held in trust and received the sheriff's deed therefor in January, 1883. The appellant thereby acquired a valid title as against all subsequent judgments.

The special finding shows that the judgments of Thompson and McCelland, under which the appellee claims, were not a lien until December, 1878, more than six years after the date of the appellant's judgment. They supposed that Philip Halfacre's interest was an equitable interest which could not be reached without the aid of a court of equity, and they commenced proceedings in equity, and obtained a decree in equity in June, 1879, that such equitable interest should be

sold on their judgments, and the same was so sold to Thompson who assigned his certificate of sale to Overstreet under whom the appellee claims. The sale to Thompson was earlier than the sale to the plaintiff, but the plaintiff had the prior lien. R. S. 1881, section 608. The plaintiff was not a party to these proceedings in equity and was not bound thereby.

There are equitable interests in land which are not subject to execution; this was decided in the case of *Modisett* v. *Johnson*, 2 Blackf. 431, where it was held that the interest of a party who holds a title-bond for land, is not subject to execution, and see, also, *Orth* v. *Jennings*, 8 Blackf. 420; *Doe* v. *Cutshall*, 1 Ind. 246; *Dickerson* v. *Nelson*, 4 Ind. 160; *State Bank* v. *Macy*, 4 Ind. 362; *Russell* v. *Houston*, 5 Ind. 180; *Davis* v. *Cumberland*, 6 Ind. 380; *Hutchins* v. *Hanna*, 8 Ind. 533; *Gentry* v. *Allison*, 20 Ind. 481; *Jeffries* v. *Sherburn*, 21 Ind. 112; *Terrell* v. *Prestell*, 68 Ind. 86. Most of these cases were decided under statutes existing prior to 1852. All of them affirm the doctrine that in general mere equitable estates in land are not subject to execution, but none of them hold that estates held in trust for another, such as the special finding in this case declares, can not be levied upon. The finding is that " from that date the same was held by said Yohe in trust for the benefit of Philip Halfacre and the other legatees, and that said Yohe had no other interest in said land than as trustee." To hold that land so held is not liable to an execution against the *cestui que trust*, would be directly in conflict with the existing statutes, above cited. See *Tevis* v. *Doe*, 3 Ind. 129. In this case PERKINS, J., said: " Our statute * * enacts, * * that ' lands, * * holden by any one in trust for or to the use of another,' shall be liable to be sold on execution, etc. Now, if Joel Tevis had fully paid the consideration for this land to Hewitt, and was entitled to a deed, but had the same conveyed for his own use to Colliver, Colliver held the land simply in trust for said Joel, and it was subject to the execution in this case."

In *Pennington* v. *Clifton*, 11 Ind. 162, PERKINS, J., said,

substantially, that the land may be regarded as subject to. execution under that clause of the statute which enacts that lands fraudulently conveyed are so subject, and probably, also, under that clause which enacts that lands holden by any one in trust for or to the use of another shall be so subject.

It may be observed that under the statute, section 752, *supra*, lands held in trust for another, and lands fraudulently conveyed, stand upon the same footing, and are equally liable to execution.

In *Wilson* v. *Rudd*, 19 Ind. 101, DAVISON, J., said, after citing the statute: "These provisions, it seems to us, make every interest which a judgment debtor has in real estate, liable to execution." In *Hubble* v. *Osborn*, 31 Ind. 249, the court referred with approbation to the case of *Tevis* v. *Doe, supra*. In *Evans* v. *Feeny*, 81 Ind. 532, this court said: "There had been no fraudulent conveyance from Peter Feeny, and none had been made by William to any third party, nor did he hold the title in trust for Peter." In the case of *Hanna* v. *Aebker*, 84 Ind. 411; this court held that in case of a fraudulent conveyance of land, the land is subject to the execution of any creditor sought to be defrauded, without resort to equity, and that where one of several creditors proceeds in equity to subject such lands to his execution, he obtains no priority over the others. This case is exactly analogous to the present case, because, under the statute, lands held in trust and lands fraudulently conveyed are in the same condition precisely, as to liability to be taken in execution. If, where lands are fraudulently conveyed, a judgment creditor acquires no priority by proceeding in equity, it follows, inevitably, that where lands are held in trust a proceeding in equity will give no priority. What we decide is that where, as in this case, a special finding shows that lands are held in trust for another, and that the holder of the lands has no other interest than as trustee, judgments against the *cestui que trust* bind the land in the order of their priority, and a junior judgment creditor will gain no priority by a proceeding in equity to subject the in-

terest of the *cestui que trust* to his judgment. The court below, therefore, erred in its conclusions of law.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and the same is hereby in all things reversed, at the costs of the appellee, and this cause is remanded, with instructions to the court below to state conclusions of law in favor of the appellant and in accordance with the foregoing opinion.

Filed June 6, 1884.