Nov. Term, 1856.

HUTCHINS v. HANNA.

----

## HUTCHINS v. HANNA, Executor.

Proceeding by notice and motion to set aside a levy and sale of real estate. The material portion of the notice was as follows: "*Hanna* executor, v. *Hutchins.* The said *Hutchins* will take notice that at the *February* term of the *Allen* Circuit Court the said executor will move the Court to set aside the sale of lot No. 104, old plat of *Fort Wayne,*

and of the west half of the nort-east quarter of section 14, town 12 east, made by the sheriff of ·Allen county in the lifetime of *James Barnett*, by virtue of *vend. exp.* No. 2,301, issued out of the *Allen* Circuit Court on a judgment in favor of said *Hutchins*, against *Comparet, Scott* and *Iten* in 1841, wherein said *Barnett* was supposed to be replevin-bail,—on the ground that the sale was without appraisement, and that there was a prior levy by a prior writ of *fi. fa.* on property of the execution-defendant *Comparet*, which levy was, at the time of the levy and sale of *Barnett's* property, and now is, undisposed of." The judgment referred to was rendered in *October*, 1841, for 899 dollars, on two notes dated *August* 12, 1840, payable in six months, one in *New York* city, the other at the branch bank at *Fort Wayne*. On the first of *December*, 1841, execution issued. On the 8th of *December*, 1841, *Barnett* became replevin-bail, and the writ was returned. In *December*, 1842, the second *fi. fa.* issued, which was levied on lot No. 49, old plat of *Fort Wayne*, as the property of *Comparet*. In *April*, 1843, this *fi. fa.* was returned, no sale for want of bidders. On the 11th of *September*, 1850, a *vend. exp.* issued, upon which *Barnett's* property, described in the notice, was sold to *Hanna*. The return states that the sheriff made and tendered a deed, which *Hanna* refused, and that he failed to pay the purchase-money. *Comparet* never had a legal title to lot 49. A deed was made, to be delivered to him when he paid a balance of 120 dollars of the purchase-money; but he died before payment. The Court below set aside the execution and the sale to *Hanna*, on the ground that the levy of the execution on lot 49 as *Comparet's* property was undisposed of, and that there was still an interest growing out of that levy vendible by a *vend. exp.;* and, further, that all property sold under any of these executions should be sold at not less than one half of its appraised value.

*Held*, that *Comparet's* title to lot 49 was only equitable, and as the lot was not subject to execution at law, the levy was properly abandoned.

*Held*, also, that by becoming bail, *Barnett* became a joint debtor with the principals in the judgment.

*Held*, also, that the judgment as to the principals, was governed by the law of the original contract, and there was no appraisement law then in force.

*Held*, also, that the legal effect of the recognizance of special bail, was a confessed judgment; but that the confession cannot be regarded in the light of a new contract with *Hutchins*, but rather as an adoption by *Barnett* of the contract already made; and hence, he was not entitled to the benefit of the appraisement law of 1841.

The contract of replevin-bail should not be so construed as to work injury to the party who must by operation of law accept it.

Every contract sought to be enforced in the courts of this State, will be presumed to have been made in this State, and to be governed by our laws, until it shall appear to have been made elsewhere, and the law governing it shall be proved.

APPEAL from the *Allen* Circuit Court.

STUART, J.—This was a proceeding by notice and motion to set aside a levy and sale of real estate. The motion made by *Hanna*, executor of *Barnett* deceased, against *Hutchins*, the execution-plaintiff, was sustained by the Court, and judgment was rendered accordingly. *Hutchins* appeals.

Nov. Term, 1856.
_____
HUTCHINS
v.
HANNA.
*Tuesday, January* 27, 1857.

To the better understanding of the points in controversy, it may be proper to copy so much of the motion as embraces the matters acted on by the Court.

" *Hanna*, executor, v. *Hutchins*. The said *George Hutchins* will take notice, that at the *February* term of the *Allen* Circuit Court, the said executor will move the Court to set aside the sale of lot No. 104, old plat of *Fort Wayne*, and of the west half of the north-east quarter of section 14, town 12 east, made by the sheriff of *Allen* county, in the lifetime of *James Barnett*, by virtue of *venditioni exponas* No. 2,301, issued out of the *Allen* Circuit Court on a judgment therein rendered in favor of said *Hutchins* against *Comparet*, *Scott* and *Iten*, in 1841, wherein said *Barnett* was supposed to be replevin-bail,—on the ground—1. That the sale was without appraisement; 2. That there was a prior levy by a prior writ of *fi. fa.* on property of the execution-defendant *Comparet*, which levy was, at the time of the levy and sale of *Barnett's* property, and still is, undisposed of," &c.

The judgment here referred to, in favor of *Hutchins* against *Scott*, *Iten & Co.*, was for 899 dollars and 88 cents. It was rendered in *October*, 1841, on notes dated *August* 12, 1840, and payable in six months, the one in *New York* city, the other at the branch of the State bank at *Fort Wayne*.

There are several counts in the declaration, viz., special counts on the notes, and the common money counts. The damages are by consent assessed by the Court on the whole declaration.

On the 8th of *December*, 1841, *James Barnett* became replevin-bail on the *Hutchins* judgment.

On the first of *December*, 1841, the first execution had issued, which was returned upon *Barnett's* entering re-plevin-bail. The stay, by agreement, was twelve months. But the entry of replevin-bail is in the usual form, for 180 days from the rendition of the judgment.

In *December*, 1842, the second *fi. fa.* issued, which was levied on lot 49, old plat of *Fort Wayne*, as the property of *Francis Comparet*. It was appraised at 1,700 dollars.

In *April*, 1843, this *fi. fa.* was returned, no sale for the want of bidders.

In *July*, 1844, an *alias fi. fa.* issued, which was levied on sundry lots (set out by their numbers) in *Hanna's* addition to *Fort Wayne*. They were nine in all—valued at 20 dollars each, and turned out, says the return by *Francis Comparet*.

In *August*, 1845, a *venditioni exponas* issued commanding the sale of the lots in the last levy. The return is, that the sheriff had sold the lots for 45 dollars, made a deed to the purchaser, but received no money.

In *December*, 1846, another *fi. fa.* issued, which was levied on the lot 104, and on the land described in the notice as the property of *Barnett*. The levy also embraced other property of the other defendants.

It appears that the levy, so far as it embraced *Barnett's* property, was set aside, and the other sold.

On the 8th of *March*, 1847, another writ of execution, reciting the substance of all the former writs, was issued in the form of an *alias fi. fa.* By virtue of this last writ, *Barnett's* property was again levied on, and as to that property returned, no sale for the want of bidders.

On the 11th of *September*, 1850, a *venditioni exponas* issued, upon which the *Barnett* lot 104, and the land described in the notice were sold separately to *Samuel Hanna*, the plaintiff in this proceeding, for the sum together of 1,230 dollars. The sheriff's return proceeds: "I made and tendered to *Hanna* a deed for the lot and land, which he refused to accept, and failed to pay the purchase-money; and not being further directed by the plaintiff or his attorney, the matter thus rests."

It may be observed, further, that *Comparet* never had
any title to lot 49. A deed was made out in his lifetime, and left with a third person for him, to be delivered on the payment of 120 dollars, the residue of the purchase-money. He died in 1845, without completing the purchase. This lot, 49, finally came to *Colerick*, by the double title of a sale on execution and a tax sale. Subsequently, it was again further encumbered by a tax-title. This was the substance of the evidence; but in reciting briefly the facts, nothing is to be implied as to the validity of *Colerick's*, or any other title, to lot 49:

On the case thus made, the Court delivered their opinion as follows: "Thereupon the Court set aside said execution on which *Barnett's* property had been sold, and the sale of said property thereon, upon the ground that the levy of said *Hutchins's* former execution on said lot 49, as *Comparet's* property, was undisposed of, and that there was still an interest growing out of said levy vendible by a *venditioni exponas;* that such sale was and is capable of divesting the title, if any, acquired by said *Colerick's* purchase and deed from the sheriff. Further, that all property sold under any execution on the *Hutchins* judgment should be sold at not less than one-half its appraised value under said declaration, proceedings and judgment." *Hutchins* excepted and appeals.

Upon this state of facts, and the ruling of the Court below, two questions arise.

1. What was the effect of the levy on lot 49?

2. Were the execution-defendants entitled to the benefit of any appraisement law?

1. The first question is easily answered. Lot 49 was not subject to execution at law for *Comparet's* debt. At the date of the judgment and levy his title was equitable only, and not leviable. *Modisett* v. *Johnson*, 2 Blackf. 431. See, also, 8 *id.* 420; 1 Ind. R. 246. The evidence sufficiently shows that he never perfected his title; so that, up to his death, he had no leviable interest to be reached by execution at law. The levy was clearly futile, and properly abandoned. *Doe* v. *Dutton*, 2 Ind. R. 309.

2. The second question, viz., were the execution-defendants entitled to the benefit of any appraisement law? presents more difficulty; and chiefly as relates to the property of *Barnett*, the replevin-bail, as that is the subject-matter of this proceeding.

The levy and sale of *Barnett's* property was, it will be presumed, set aside mainly because of the supposed validity and sufficiency of the levy on lot 49, which remained undisposed of. But as the levy on 49 was useless and properly abandoned, there is nothing in the record to invalidate the levy on *Barnett's* property. It is, therefore, taken, for the present, as a good levy.

What law should govern the sale on that levy? · The notes upon which the judgment was rendered, were made in *August*, 1840. The first appraisement law was passed *February* 12, 1841. It required the sale to be at half the appraised value. The judgment was rendered in *October*, 1841, and *Barnett* became replevin-bail on the 28th of *December* following.

And the question is, which law shall govern the sale of the property of *Barnett* as replevin-bail—the law of the contract in 1840, or the law of the date of the replevin-bail in 1841?

The statute in force at the time in relation to replevin-bail, was that of 1838. It provided for a stay of execution upon recognizance of a sufficient surety, acknowledging himself bail for the payment of the judgment; and that such recognizance should have the force and effect of a judgment confessed. R. S. 1838, p. 280.

It seems clear that the confession was of the particular judgment, with all its incidents and terms, only in so far as it was modified by the statute authorizing it. He adopted the contract of *Scott, Iten & Co.*, just as it stood in the judgment. He was a joint debtor in that judgment with the principals. *Carnahan* v. *Brown*, 6 Blackf. 93. The judgment as to the principals is governed by the law of the original contract. *Bronson* v. *Kinzie*, 1 How. U. S. 311.—*McCracken* v. *Hayward*, 2 id. 608. It is, say these authorities, as though the law of the con-

tract were written out in it. The law of the contract, *(August* 12, 1840,) was without appraisement. The legal effect of the recognizance of replevin-bail, was a confessed judgment. That confession cannot be regarded in the light of a new contract with *Hutchins;* for *Hutchins* is not really a voluntary party to it. It must, rather, be regarded as an adoption, on the part of *Barnett*, of the contract which *Hutchins* had already made with *Scott, Iten & Co*. As to the bail, therefore, it seems to us it must be the same as it is to the principals. He adopts their contract—they are joint debtors. That contract is, that the property of these joint debtors shall be sold without appraisement. This is the law virtually written out in the judgment, the terms of which he has adopted. The only favor extended to him is by operation of law also, viz., that the property of the principals shall be first exhausted.

Nov. Term, 1856.

HUTCHINS
v.
HANNA.

The construction thus given to the law of replevin-bail, while it seems natural and reasonable in itself, is due to the execution-plaintiff. It has been already intimated that the contract is involuntary on the part of *Hutchins*. It is a contract by operation of law, and the act of a third party, to which the plaintiff's consent is neither asked nor deemed essential. Yet are his rights and remedies postponed by it. Meantime, the principals may become insolvent. The contract of replevin-bail should not, therefore, be so construed as to work injury to those who have no option but to accept it—unless, indeed, such was clearly the meaning and intention of the legislature. In the light we view it, no violence is done either to the language or intention of the statute.

Other questions made in argument, but which do not appear to have been made below, need not be noticed. Nor is it necessary to discuss questions of lien which might possibly arise under this construction.

A majority of the Court are of opinion that *Barnett's* property was liable to sale without appraisement; and that, therefore, the judgment of the Court below setting aside the levy, &c., should be reversed.

At the *May* term, 1856, the foregoing opinion was delivered. It was taken for granted that the notes dated *August*, 1840, upon which the judgment was rendered, were not subject to any appraisement laws. Hence, the argument of counsel of both parties, on that point, was passed in silence.

On petition for a rehearing, some suggestions were made which raised a doubt; and the rehearing was granted. We now append to the former opinion a brief review of the point thus made.

It is urged that some of the notes were made and payable in the State of *New York*, and that, therefore, the judgment was to be collected subject to the appraisement laws in force at the date of the recovery, and not according to the law of the contract. In support of this position, *Doe* v. *Collins*, 1 Ind. R. 24, and *Babcock* v. *Doe* d. *Bowman*, at the present term, are cited (1).

Before examining the doctrine in these cases, let us ascertain the facts in this case.

The notes are not set out *in haec verba* in the original suit of *Hutchins* v. *Scott, Iten & Co.* In the declaration, one of the notes is thus described. That on the 12th day of *August*, 1840, at *New York*, to-wit, at the county of *Allen* aforesaid, the defendants, by their firm style of *Scott, Iten & Co.*, made their promissory note in writing, and thereby then and there promised to pay, eight months after date, to the order of *Hutchins*, 338 dollars and 48 cents, at *New York* city, in city funds, for value received.

Another of the notes for 538 dollars and 48 cents, is similarly described, except that it is payable at the branch bank at *Fort Wayne, Indiana,* with the current rate of exchange on *New York* at said bank. The judgment was by confession. Nothing appears in the declaration in any other way explanatory of where the notes were made. No law of the State of *New York* was either pleaded by the parties, or in any manner before the Court.

Under this state of facts, what was the Court to infer

as to the place where the notes were made—in this State or out of it?

The record alleged under a *videlicet* that the notes were made in *Allen* county. There was no evidence on the point either way. For the purposes of that suit, that allegation, generally a mere form, was the only guide. It is quite clear that either party deeming it material to his rights might have both pleaded and proved the place of making, and the law which governed them. The plaintiff might have pleaded and proved, had such been the fact, that the notes were made in the State of *New York*, and that the law of that State allowed 7 per cent. interest. So had the notes been made when the interest was 5 per cent., it would have been the defendant's right to show the place of making, and the law to that effect.

But when neither party alleges the fact for the purpose of claiming any advantage from it, the Court cannot judicially notice that the *New York* named in the notes is in the State of the same name. In the original case of *Hutchins* v. *Scott, Iten & Co.*, no such fact is alleged for that or any other purpose. The State of *New York* is not mentioned. The foreign birth of the notes is, in that case at least, negatived by the allegation under the *videlicet*. In such a state of the pleadings, the courts are not called upon to presume any thing beyond the jurisdiction. Suppose a note dated at *Jackson*. There are in the *United States* between fifty and one hundred towns of that name. In the absence of any claim, allegation, and proof on the point, we cannot infer, for the purpose of affecting the rights of either party, that the "*Jackson*" having the largest population is the one intended. There is a *New York* and a *Philadelphia* in this State. The courts may be presumed to know the geography of their own jurisdiction. But that would hardly extend to the names of towns springing up like mushrooms all around us—much less to such names in a foreign jurisdiction.

We think the reasonable and proper presumption is

Nov. Term,
1856.

HUTCHINS
v.
HANNA.

that every contract sought to be enforced within our jurisdiction, was made here and is governed by our laws, until the contrary appears. This was the doctrine of the Court in *Franklin* v. *Thurston*, 8 Blackf. 160. There it is held that "a mortgage must be presumed to be executed in this State, the contrary not appearing." And there too, as in the case at bar, the controversy was whether the law of the contract or that of the decree should govern.

In *Doe* v. *Collins*, 1 Ind. R. 24, the note was found by the Court to be made in the State of *Illinois*. In that state of facts it is properly said that this Court will not. enforce the remedy according to our law at the date of the contract. Our law could not become incorporated into that contract, until it underwent . some change in this State. That change took place when the note was merged in the judgment. Hence, it was correctly held that our execution laws in force at the date of the judgment, and not those in force at the date of the contract, governed. There is no conflict between the ruling here and in that case.

The case of *Babcock* v. *Doe* d. *Bowman*, at the present term, has no application to that before us. The judgment was on two notes, made in this State, one before and the other after the taking effect of the appraisement laws. The place of execution was not mooted. The simple question was the law of the contract, and what law should be applied when the two notes reduced to one judgment, were governed by different laws as to appraisement. The plaintiff elected to merge his two separate contracts into one in the form of a judgment; and we simply determine the effect of that merger.

The Court are, therefore, unanimous, that the presumption that all contracts sued in this State were made here, must prevail until the contrary is made to appear.

GOOKINS, J.—Being unable to concur in the views of

a majority of the Court, I will state briefly the grounds of my dissent.

Judgment was rendered in 1841 upon a contract for the payment of money, dated in 1840. The judgment was replevied by *Barnett;* and the question is, whether real property of the replevin-bail can be sold on execution without appraisement. At the date of the contract there was no appraisement law in this State, but at the date of the entry of bail, real property taken in execution was required to be appraised, and to sell for not less than one-half its appraised value.

The act of 1838, (p. 280, s. 13,) provides that any person against whom any judgment may be obtained, may have a stay of execution thereon, &c., by procuring one or more sufficient sureties to enter on the records of the court rendering such judgment a recognizance acknowledging himself or themselves bail for the payment of such judgment, which shall have the effect and force of a judgment confessed in a court of record, against the person or persons acknowledging the same, and their estates, and execution may issue thereon accordingly. This act governs the present case.

The cases of *Bronson* v. *Kinzie,* 1 How. U. S. 311, and *M'Cracken* v. *Hayward,* 2 id. 608, which are held as controlling authority in this Court, have settled the principle that the law of the contract governs the remedy, so far as to deny the right of appraisement, if none existed at the date of the contract. The same rule gives the right, if there was such a law in force when the contract was made. *Harrison* v. *Stipp,* 8 Blackf. 455. The contract, according to these authorities, is to be construed as if the statute were embodied in it.

*Barnett* was no party to the original contract. Before he incurred any liability, the contract of *Scott, Iten & Co.,* was merged in the judgment. *Barnett's* only liability to the plaintiff in execution was by the confession of a judgment in his favor in 1841. His undertaking derived all its force from the statute. Until this was done, his

estate was in no manner affected, either directly or remotely. I regard the cases of *Bronson* v. *Kinzie*, and *M'Cracken* v. *Hayward*, induced, perhaps, by unwise and imprudent relief legislation, as having gone very far to confound all distinctions between rights and remedies, and I am not disposed to carry the principle of these cases beyond the cases themselves. The decision in this case does, I think, carry the principle far beyond those cases, and in fact, denies to *Barnett* the very rule established by them—that is, that his undertaking shall be governed by the law of the remedy in force at the time his liability accrued.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. B. Howe*, for the appellant.

(1) *Ante*, 110.