Filed Oct. 11, 1884.

————————

No. 11,706.

BAKER ET AL. *v.* MERRIAM ET AL.

PRESUMPTION.—*Public Officer.*—The presumption is always in favor of that which is ordinarily and usually done in like cases. A public officer is presumed to have done his duty.

REPLEVIN BAIL.—*Contract.—Terms.—Statutory Undertaking.—Effect.—Motives.*—Where a contract is one made by the parties directly, then what all agree upon constitutes its terms, but where the statute gives a certain meaning and force to an undertaking, then that meaning and that force it possesses irrespective of the motives which prompted its execution.

SAME.—*Reversal of Judgment Against one.—Release of Undertaking.*—A party who becomes replevin bail upon an execution issued on a judgment against three defendants is released by the reversal of the judgment as to any one of the three judgment debtors.

SAME.—*Judgment Confessed.—Principal and Surety.*—A replevin bail, in legal effect, is similar in important features to a judgment confessed for all, and not merely for a part, of the principal debt. He becomes liable for all the defendants, and they all stand to him as principals to a surety. That the request was made by one for the bail is immaterial.

Baker *et al. v.* Merriam *et al.*

SAME.—*Lien.*—*Estoppel.*—The replevin bail is so far concluded by the un-
dertaking that it operates as a lien from the time it is entered into, and
he is so far concluded that he can not, on his own account, attack the
judgment.

SAME.—*Parol Evidence.*— *Written Contract.*—The undertaking of replevin
bail can not be varied by parol evidence; it is a written contract, and
is governed by the general rules applicable to other written contracts.

SAME.—*Recovery of Money.* —*Restitution of Property.*—The undertaking of
replevin bail extends only to a recovery of money, and not to the order
of restitution of property.

From the Cass Circuit Court.

*D. P. Baldwin, M. Winfield* and *C. E. Taber,* for appel-
lants.

*D. B. McConnell,* for appellees.

ELLIOTT, C. J.—The material allegations of the appellees'
complaint are these: That on the 10th day of December,
1879, Baker recovered judgment in the Cass Circuit Court
for the possession of real estate and $500 damages against
Loyal Alford, Carrington Alford and Jackson Dobbins; that
at the time the judgment was taken the Alfords were resi-
dents of Cass county, and Dobbins was a resident of White
county; that the latter was solvent and the owner of prop-
erty, and the former, the Alfords, were wholly insolvent; that
Baker, after obtaining the judgment, and without seeking to
enforce it against the Alfords, issued an execution to White
county, and instructed the sheriff of that county to levy on
the property of Dobbins; that the sheriff was proceeding to
levy on the property of Dobbins, when he procured the ap-
pellees to become replevin bail; that they undertook, as re-
plevin bail, solely at the request of Dobbins, to stay the exe-
cution as to him, and wholly relying upon his solvency; that
after the appellees became replevin bail, Dobbins appealed
from the judgment and secured a reversal, but did not file
any bond nor obtain a supersedeas; that while the appeal
was pending Dobbins died, and his estate was finally settled
in due course of administration, and distribution to the heirs
properly made; that after the reversal of the judgment Baker

took no proceedings in said cause, and it was struck from the docket. After this had been done he issued an execution against the appellees, and is attempting to enforce it by a sale of their property. The prayer is for an injunction restraining the sale of the appellees' property.

It is important to note that the complaint does not state the terms of the undertaking as bail. There is nothing indicating that it was not in the usual form, or that it did not possess the force annexed by law to undertakings of that character. Courts know, and parties know, from positive statute and from repeated decisions of this court, what the form and effect of such undertakings are. We must presume that the undertaking was in the usual form and possessed the usual force, since to do otherwise would be to presume that the sheriff and the bail had done an extraordinary thing, and this we could not do without violating a settled rule of law as well as logic, for the presumption always is in favor of that which is ordinarily and usually done in like cases. This presumption is here aided by another, namely, that a public officer is presumed to have done his duty.

The question is not on whose solvency the appellees relied, nor is it material that their motive was to favor one only of three judgment defendants. Motives are not consideration, nor are they elements of contracts or of judgments confessed. *Standley* v. *Northwestern, etc., Ins. Co.,* 95 Ind. 254. Where the contract is one made by the parties directly, then what all agree upon constitutes its terms, but where the statute gives a certain meaning and force to an undertaking, then that meaning and force it possesses irrespective of the motives which prompted its execution. There may be cases where the question of motive may be important as assisting in the construction of the contract or undertaking, but, granting that there are such cases, it is clear that this can not be one of them, for here there is nothing to invoke the assistance of extraneous circumstances; on the contrary, the undertaking is one with a fixed and definite legal meaning and force.

Assuming, as we must, that the undertaking was the ordinary one of replevin bail executed to a sheriff upon an execution issued on a judgment against three defendants, the controlling question comes to this, was the bail released by the reversal of the judgment as to one of the three judgment debtors? The undertaking of the appellees, treated, as it must be, as an ordinary undertaking of bail, bound them to pay the judgment in case of the default of their principals, and bound them for the whole money judgment. Its legal effect was similar in important features to a judgment confessed, and to a judgment confessed for all, and not merely for a part, of the principal debt. *Maloney* v. *Newton,* 85 Ind. 565 (44 Am. R. 46) ; *Hutchins* v. *Hanna,* 8 Ind. 533 ; *Hardenbrook* v. *Sherwood,* 72 Ind. 403 ; *Eberwine* v. *State, ex rel.,*79 Ind. 266 ; *Sterne* v. *McKinney,* 79 Ind. 578 ; *Vincennes Nat'l Bank* v. *Cockrum,* 80 Ind. 355.   In becoming bail in the usual way, the bail becomes liable for all the judgment defendants, and all of them stand to him in the relation of principals, he being the surety, clothed with the ordinary rights of a surety.   *Vert* v. *Voss,* 74 Ind. 565 ; *Barlow* v.*Deibert,* 39 Ind.16 ; *Hutchins* v. *Hanna, supra ; Kane* v. *State, ex rel.,* 78 Ind. 103.   The appellees became liable for all of the judgment debtors, as well as for all of the money part of the judgment.   It is not material that one of the joint debtors made the request of them to enter bail, the undertaking was for all of the debtors; in other words, for the judgment debt just as it stood, both as to parties and amount.   This was so held in *Coon* v. *Welborn,* 83 Ind. 230, where it was said :  " But the complaint in this case shows that replevin bail was entered upon the judgment, and the execution thereby stayed ; and, notwithstanding the allegation that this was done without the consent of the appellee, it is not denied that it was done at the request of his codefendants in the judgment ; and it is plain that, if compelled to pay the judgment or any part of it, the replevin bail is entitled to recourse on the appellee as well as against those at whose request he signed."   Our inquiry is by the principles

Baker *et al. v.* Merriam *et al.*

settled for us by these authorities narrowed to this, is the surety in an undertaking of a replevin bail for an entire judgment and for all of three judgment debtors bound in a case where the judgment is reversed as to one of the three? There is not a more familiar rule in the books than that a surety is entitled to stand upon the letter of his contract, and this rule, of course, extends to parties as well as to the terms of the contract. It has been again and again decided that if one of several principals for whom the surety stands is released, the surety's responsibility ceases. These are elementary principles, and there can be no doubt as to their existence and force; the only possible debate is as to whether they apply where one of several joint principals is released by a judgment of reversal. It is plain that when Dobbins was released the judgment ceased to be the one replevied by the appellees, for the judgment which they replevied was against three persons, whereas the release of Dobbins left a judgment against two persons. A judgment against two persons can not be the same as a judgment against three. It follows, with absolute logical precision, that the judgment which the appellants seek to enforce against the appellees is not the same judgment that they undertook to pay. The reversal terminated the existence of the judgment as to Dobbins, and though it was possible to secure a new judgment, it was not possible to revivify the old; for that there is no resurrection.

It would be inequitable to compel a surety to pay a debt adjudged to be owing by two persons only, when he had agreed to pay a debt for which three were bound. To hold a surety who undertakes for three or more persons to liability where the debt as to one of them is annulled by a judgment of a court, would often result in gross injustice. Suppose, for illustration, a man to undertake for ten persons and the judgment to be reversed as to nine, would it not be grossly unjust to make him stand for one when, at the time he contracted, he had a right to expect that there were ten principals to whom he might look for indemnity instead of one?

In principle there is no difference between the case supposed and the actual case under investigation, for whether the principals released· without the consent of the surety be one or nine does not change the legal principle. A rule so just in its operation, and so strongly grounded in principle, as that which protects a surety against the release of any one of the persons for whom he became liable, should never be impaired or weakened by limitation or restriction, unless the statute under which the undertaking of surety is entered into or the terms of the contract impose limitations and restrictions.

It is not the consent of the creditor that confers, as against the surety, the right to release one of several principals; that right can only be conferred by the surety's consent. It is not material to the surety's rights whether the creditor consented to the release or not, the material question is whether the surety consented. The creditor may or may not be willing to release the principal, but whether willing or unwilling, the release impairs the rights of the surety, and he may insist upon his discharge. A surety is just as much injured in a case where the judgment is reversed against the will of the creditor as he would be if the creditor had consented, for in either case a substantial right of the surety is swept away. The rule of which we are speaking is not made to punish the creditor, but to protect the surety, and protection to him requires that it be held that where one of the principals is released, with or without the consent of the creditor, the suretyship shall cease.

The general and almost universal rule is that a surety is entitled to be subrogated to the rights of the creditor against all of the principals, and this right can not exist where the creditor is adjudged to have no right at all against one of the principals, and this is the effect of the judgment of reversal, secured by Dobbins. The surety is discharged in all cases where he can not secure himself by paying the claim of the creditor and proceeding against all of the principals. *Boschert v. Brown*, 72 Pa. St. 372.

The extinction of the liability of a principal extinguishes that of the surety, no matter how the liability is extinguished, so that it is not extinguished by the act of the surety. Whether the liability is extinguished by judgment of the court, or by other causes, the liability of the surety, which is but an incidental one, dies with it. *Gill* v. *Morris,* 11 Heisk. 614; S.C., 27 Am. R. 744; *Ames* v. *Maclay,* 14 Iowa, 281; *Middleton* v. *First National Bank,* 40 Iowa, 29; *Sage* v. *Strong,* 40 Wis. 575; Brandt Suretyship, section 121. There are exceptions to this rule, as, for instance, the case of an adjudication in bankruptcy discharging the principal debtor. *Ray* v. *Brenner,* 12 Kan. 105. The difference between cases of the class represented by the one cited and the present is apparent; in the former the judgment is not actually extinguished, but the debtor is discharged; in the latter the judgment is effectually extinguished. There is still another distinguishing feature. Parties in contracting assume that the law enters into their compact as a silent factor, and the surety assumes the risk of a discharge in bankruptcy, because, as the law, that enters into his undertaking; but it is absurd to say that a surety who undertakes to pay a judgment assumes to pay what the law subsequently declares through its representatives, the courts of the land, to be no judgment.

The principles to which we have referred make it clear, that unless there is something in the terms of the contract, or in the statute under which it is executed, the reversal of the judgment as to one of several defendants releases the replevin bail.

In the terms of the contract there is nothing changing the ordinary rules. Nothing in the language binds the replevin bail to pay a judgment which by the decision of the court becomes no judgment at all. No word can be found in the contract which binds the bail to pay a judgment made lifeless by the courts in due course of law.

The statute enters into the undertaking, and if that pro-

vidcs that the bail shall be liable whether the judgment be annulled or not, then the surety can not escape. *Pence v. Armstrong*, 95 Ind. 191, see opinion, p. 206. It becomes important, therefore, to examine our statutory provisions. The provision of one section is, that " The undertaking in the recognizance shall be for the payment of the judgment, interest, and costs that may accrue at or before the expiration of the term of the stay of execution." Sec. 691, R. S. 1881. The effect of this provision is, clearly enough, to make the bail liable for the judgment and its incidents, and for that only. If liable for the judgment, and no other thing, then, when the judgment became extinct, there would be nothing for which the bail could be liable. If no judgment, then nothing binding the bail, for it is only the judgment that he undertakes to pay. If there were no other provision than this, there would not be the shadow of a doubt. Another section provides that the entry of replevin bail shall have the effect of a judgment confessed, but this provision does not substantially change the contract; it does not, at all events, make the bail liable where there is no judgment, and that fact is judicially determined on a direct appeal, for the existence of a judgment lies at the very foundation of his undertaking, gives it life, and supplies the measure of liability. The bail is so far concluded that the undertaking operates as a lien from the time it is entered into, and he is also so far concluded that he can not on his own account attack the judgment. But the right of appeal remains in the principal debtor; he may appeal, and it were a vain thing to grant him this right, and yet make it a barren one by holding that, even though it were sustained, still the judgment retained life and vigor. It has long stood as the law of this State that the entry of replevin bail does not bar the right of appeal. *Hyer v. Norton*, 26 Ind. 269. Our statute gives the general right of appeal, making only a single exception, and that is where the judgment has been paid in whole or in part. Prior to this statute, it was held that payment did not cut off the right of appeal, and surely courts can not deny

what the law-making power has rightfully granted. It is clear that the right of appeal, with all its incidents and results, exists, and parties must be deemed to contract with reference to the law, and the judgment creditor must know that he can not make the bail pay a judgment extinguished by the court in due and legal form. He is bound by the law as it enters into and rules the undertaking. *Pence* v. *Armstrong, supra.* It is evident that the statute does not change the elementary rules which we have discussed.

Disastrous consequences would follow from the doctrine for which appellants contend. The right of appeal would be made fruitless in the face of a plain statute. The strange anomaly would be brought into existence of a surety being compelled to pay an apparent judgment declared by the highest court of the State to be no judgment. The right of subrogation, declared by many cases (see *Pence* v. *Armstrong, supra, Gerber* v. *Sharp,* 72 Ind. 553, and authorities cited), and upheld by the soundest principles of justice, would be overthrown, for if there was no judgment there would be nothing to which the surety could be subrogated. Our statutory provisions and our decisions would be thrown into hopeless confusion, and great injustice would be done. Strong reasons, therefore, combine to support our conclusion.

Two cases are cited by the appellants, but they are founded on a statute widely different from ours. In one of these cases, *Jones* v. *Bomberger,* 97 Pa. St. 432, the court said: " It will be observed that the act of 1845, defining the liability of bail for stay of execution, does not declare the bail shall be conditioned for the payment of the judgment, but for ' the debt or damages, interest and costs recovered.' * * It is a debt, the amount of which has been ascertained and fixed by the judgment, but it is nevertheless a debt. The obligation on the part of the bail is a contract to pay the debt which has thus been ascertained." Our statute, in unambiguous terms, confines the obligation of the bail to the judgment, and the reasoning of the court in the case cited shows that if that had been the

provision of the statute before it, a different conclusion would have been reached. The other case, *Jones* v. *Raiguel,* 97 Pa. St. 437, is built upon the same statute, and is disposed of by what we have said. There is, however, another reason why it is not in point, and that reason is, that the effort to set aside the judgment was made by the bail, and not by the judgment debtor.

The case is not at all like that of the death of the principal. In such a case the judgment remains, and the bail may have subrogation. Here the judgment has ceased to exist; the reversal was its death.

We agree with appellants' counsel that an undertaking of replevin bail can not be varied by parol evidence. It is a written contract, and is governed by the general rules applicable to other written contracts. *Hopper* v. *Lucas,* 86 Ind. 43 ; *Smith* v. *Tyler,* 51 Ind. 512 ; *Jones* v. *Swift,* 94 Ind. 516, *vide* p. 521.

While we hold that the contract can not be varied by parol evidence, we do not find it necessary to decide whether there was or was not error in allowing the appellees to introduce the evidence which they claim tended to make out the equity of their case, because, conceding that the evidence was incompetent, still the case is one in which it is plain that no harm was done. No matter what the evidence was, the appellees. were entitled to a recovery when they proved that the judgment replevied by the appellee had been annulled, for with the destruction of this judgment their liability terminated. This was the inevitable result, and laying aside the testimony objected to, the evidence was so strong as to shut out all doubt.

It is argued that the evidence does not make out a case, for the reason that it shows that in the judgment appealed from there was an order for the restitution of land, and that the judgment of reversal merely operated upon that part of the judgment which adjudged a recovery of $500. The answer to this argument is, that the undertaking of replevin bail extended only to the recovery of money, and not to the order

of restitution.   This is so by the form of the contract and by force of the statute we have referred to.   The appellees did not undertake to stay the operation of the order of restitution ; they undertook to pay the judgment, and, as they stand as sureties, their obligation can not be extended beyond its letter.   The statute does not provide that a stay may be entered in cases where possession of property is awarded, but provides that bail may be entered where the judgment is for " the sale of property or the recovery of money."   A judgment awarding possession is neither for the sale of property nor for the recovery of money.   In *Ensley* v. *McCorkle*, 74 Ind. 240, the judgment was for the sale of property, and that distinguishes that case from the present. But in that case the point decided was essentially different from any involved in this.

We have considered all the propositions argued by counsel, and find no material error in the proceedings and judgment of the trial court, and, therefore, affirm the judgment.

Filed Oct. 15, 1884.