## MILLER v. COLVILLE *et al.*

1. Sheriff's sale: SETTING ASIDE OF. The sufficiency of grounds alleged
and proved, involving the minority of parties, inadequacy of price, a
prior levy upon other land, notice to the purchaser that the title was not
in the judgment debtor, diligence in making the application to have it
set aside, and a tender to the purchaser of the amount of the judgment
which it was sold to satisfy, considered and determined.

*Appeal from Mahaska District Court.*

THURSDAY, JUNE 28.

SHERIFF'S SALE : SETTING ASIDE OF, &C. — This contro-
versy concerns the rights of the respective parties as to a
certain forty acres of land.

From the bill, the various answers and cross-bills and
evidence, the following facts appear :

That in May, 1857, Levi Ellis conveyed the land in
dispute to his son-in-law, Alfred Miller, for the price of
$600, of which $100 was paid down ($72 in money and
the balance in work, &c.), $100 was intended by Ellis as a
gift or advancement to his daughter (the wife of Miller),
and four notes of $100 each, were given for the balance,
secured by mortgage. The mortgage was never recorded.
At the time the notes were drawn by the justice, Ellis told
him that he intended one of them for each of his four
daughters, and he wished the papers arranged or drawn

accordingly. The justice drew the notes payable to Ellis, but at the time made upon one, this indorsement, "For Angeline Ellis;" upon another, this, "For Louisa Ellis;" upon another, this, "For Elizabeth Ellis;" and upon the other, this, "For Abigail Ellis;" these being the names of his four daughters. The notes were made payable at about the time the daughters would severally attain their majority.

Miller took possession of the land and remained there until 1860, when he removed into another county. And here there is an important dispute of facts. It is affirmed by Miller and Ellis that Miller still owns the forty acres of land, subject to the amount due on the above notes. On the other hand, it is claimed by Colville, that in 1860, Miller verbally sold the land back to Ellis; that Ellis paid him back all that he had paid upon it; that Ellis took possession in his own right, and has really owned it ever since, although Miller has continued to retain, and still retains, the legal title. At the December Term, 1859, of the Supreme Court, a judgment for $11.75 was rendered in favor of Colville against Ellis. Upon this an execution issued February 1, 1860. This execution was levied on the 13th day of March, 1860, upon *another* forty acres of land, as the property of Levi Ellis, and advertised for sale. An indorsement to this effect was made upon the execution by the sheriff, but afterwards covered or pasted over with another paper upon which the sheriff simply returned the execution as having-expired in his hands.

On the 2d of April, 1860, another execution issued, which was levied upon the land in dispute; which was sold by the sheriff on the 12th day of May, 1860, to Colville, for $30.68, the amount due, and costs. On the 13th day of May, 1861, Colville obtained a sheriff's deed, and on the 14th day of May, 1861, the present suit was commenced.

The original bill was brought by Miller against Macon

(the sheriff) and Colville, the judgment creditor of Ellis, and alleges Miller's ownership of the land, the illegality of the sheriff's sale, and prays that the sale may be set aside, &c.

Colville answers, and files a cross-bill against Miller and Ellis, setting up the original sale by Ellis to Miller, the rescission thereof in 1860, and that Miller holds the title in trust for Ellis, and prays for title, &c.

Ellis and Miller answer the cross-bill, and set up the sale to Miller in May, 1857, the terms of it, the outstanding and unpaid notes in the hands of the four daughters of Ellis, the invalidity of the sale on execution in consequence of the prior levy on other land not being disposed of, &c., and deny that Miller holds the land in trust for Ellis, or that Miller ever sold the same back to Ellis, as alleged by Colville.

The four daughters, holding these notes, were, by the court, ordered to be made parties to Colville's cross-bill; they come in and produce their notes, and allege that they were given to them as an advancement by their father, who at the time owned four hundred acres of land, besides much personal property, and was not in debt. They pray a foreclosure, tender Colville the amount of his debt, and ask for general relief.

The jury found specially that Miller did resell the land to Ellis in 1860, and that Ellis, and not Miller, owned the same at the time of the levy and sheriff's sale. The court entered a final decree:

1st. Dismissing Miller's original bill for want of equity.

2d. Court found as a matter of fact that there was a prior levy on other land not set aside and disposed of at the time of the levy and sale under the second execution, and that this rendered the sheriff's sale to Colville void.

3d. That the amount of Colville's judgment had been paid into court.

4th. That Colville's cross-bill be dismissed.

5th. That the daughters' application for foreclosure be dismissed, *but without prejudice.*  Colville appeals.

*Seevers & Williams* for the appellant.

*J. A. L. Crookham* for the appellee.

DILLON, J. — That Miller purchased the land in dispute of Ellis in 1857, and paid $100 upon it, gave his four notes of $100 each (now in the hands of the daughters of Ellis) secured by mortgage; that the other $100 was an advancement to his (Miller's) wife by her father; that Miller remained in possession until 1860; that he never paid these notes and that they are in the hands of the daughters uncanceled, and as far as shown, unpaid, are undisputed facts in the case.

1. SHER- IFF'S SALE: setting aside of.

There is affirmative proof that the father was at the time worth between $2,000 and $3,000, and that he was wholly or almost wholly out of debt.  There is nothing to negative this, and indeed it is not shown that Ellis has not always been and is not now perfectly solvent.  It is proved that the daughters received possession of the notes of Miller soon after their execution, and have had the possession of them ever since.  Their right to these notes was perfect by the delivery thereof to them, and the gift or advancement was not fradulent.  Their right to have these notes enforced against the land is also clear, unless Colville is to be regarded as a *bona fide* purchaser at the sheriff's sale for value, and without notice.

So far as Miller is concerned, we may observe that the evidence tends to show, and the jury and the court below found, that in 1860 he resold the land to Ellis.  We see no reason to interfere with the finding, and hence Miller's

Miller v. Colville.

bill for relief, which went upon the ground that he owned the land, was properly dismissed.

But the resale by Miller to Ellis did not destroy the right of the daughters, as the holders of Miller's notes to enforce them against Miller and against the land in dispute mortgaged by Miller to secure them.  There is not a particle of evidence showing that they ever waived their rights.  Is Ellis the judgment debtor, or are the daughters entitled to have the sheriff's. sale and deed set aside? However it may be as to Ellis, we think the daughters are, under the circumstances, entitled to this relief.  We briefly enumerate some of these circumstances.

1st.  Two of the daughters were minors at the date of the sheriff's sale, and had so far. as shown no actual know-ledge thereof.

2d.  The inadequacy of the price paid by Colville.  He paid $30.68 for land worth from $400 to $600.

3d.  There was a prior levy upon other land not dis-posed of, rendering the sheriff's sale irregular.  There is no necessity for going as far as the District Court, which held that this alone rendered the sheriff's sale void.

4th.  The legal title to the land was in Miller, whose deed was duly recorded.  Colville knew or was bound to know this, and he knew that he was only levying upon and buying Ellis' equities in the land.  He did not pay for or suppose he was buying a clear and undisputed title. He bought and paid for the chances.

5th.  The attack upon the sheriff's sale was not delayed until circumstances had changed, and the right of third persons had attached.

6th.  The amount of Colville's judgment was tendered and paid into court for him.

Under these circumstances we hold that the daughters are entitled to have the sheriff's sale set aside.  We there-fore affirm the decree below so far as it orders the dismissal

of Miller's original, and of Colville's cross-bill.   We order the sheriff's sale and deed to be set aside.   Colville being entitled to the $25 ·paid into court, this being the amount of his judgment and interest.   As the daughters do not appeal, we also affirm the order of the court below, dismissing *without prejudice* their application for a foreclosure. The court below should have made an appropriate order as to costs, taxing Miller and Ellis with all those occasioned by the unsuccessful attempt to show that Miller had never resold the land to Ellis.   The daughters should recover against Colville, costs only so far as they were made by his resistance to their claim.

As the decree below is substantially affirmed, Colville must pay the costs of appeal.

That the costs may be equitably apportioned, and this decree entered and carried out, the cause will be remanded.

Affirmed.