Hultz v. Zollars.

AFFIRMED.

39  589<br>
105  627

## HULTZ ET AL. v. ZOLLARS ET AL.

1. **Judicial Sale:** CONSTRUCTIVE NOTICE. Under Section 1947, Code of 1851, the publicity of the proceedings of a sheriff's sale is constructive notice to those only who derive their title from or through the judgment debtor.

2. **Judgment:** LIEN OF. A judgment is not a lien upon an equitable interest in real estate in such a sense as to charge or affect a subsequent bona fide purchaser without notice. Following *Bridgman & Co. v. McKissick & Bone*, 15 Iowa, 260.

3. **Parties:** WHO ARE NOT BOUND BY AN ADJUDICATION. Judicial proceedings, to which one is neither privy nor party, are not conclusive upon him. That a conveyance from plaintiffs' source of title was set aside as void in a proceeding to which neither the grantee, nor those claiming under him, were made parties, did not impair plaintiffs' title.

### *Appeal from Wapello Circuit Court.*

### THURSDAY, OCTOBER 22.

THIS action was brought July 7, 1869, to quiet the title in plaintiffs to fifteen acres off the north end of the west half of the northeast quarter of section twenty-four, township seventy-two, range fourteen west, in Wapello county. The plaintiff, Electa Hultz, is the widow of Abraham Davis, deceased, to whom, in right of dower for life, the land has been assigned;

and the other plaintiffs are the children and only heirs at law of said Davis, deceased; the plaintiffs, collectively, own the entire interest formerly vested in said Davis. The defendants claim title to the land, and have laid it off into city lots as an addition to Ottumwa. The cause was tried by the first method of trying equitable issues, and judgment was rendered for plaintiffs. The defendants appeal.

*H. B. Hendershott*, for appellant Zollars.

*E. L. Burton*, for appellant Ballingall.

*J. W. Dixon* and *J. B. Ennis*, for appellees.

COLE, J.—The parties filed an agreed statement of facts, embracing all the material facts of the case. The evidence in the record relates mainly to the question of possession and the right of inheritance of the plaintiffs. This latter fact is not here controverted, and the question of possession is not material in the view taken by this court. The only question at issue is as to which party has the title.

The plaintiff's title rests upon these facts: July 21, 1846, Wm. H. Evans became the sole owner of the entire half of the quarter section, by purchase from the government. On the same day he conveyed the same by general warranty deed, for a valuable consideration paid him, to Francis M. Harrow, and the deed was duly recorded July 15, 1848. November 27, 1852, Francis M. Harrow conveyed by warranty deed, for a valuable consideration, the fifteen acres in controversy, to Abraham Davis, and the deed was duly recorded November 29, 1852. At the time of his purchase Davis had no actual knowledge whatever of any fraud or fraudulent intent connected with the conveyance to Francis M. Harrow, nor of the sale of the land on execution against Chas. F. Harrow, nor of any adverse claim to the land by any one, and made his purchase in good faith. That about February 1, 1856, Abraham Davis died, leaving the plaintiffs, his widow and children, who are his only heirs at law, and are still possessed of all the title he owned.

The defendants' title rests upon these facts: That Francis M. Harrow was the son of Charles F. Harrow; that the deed from Wm. H. Evans to Francis M. Harrow was made to the said Francis, instead of the said Charles, with the intent on the part of both to delay and defraud the creditors of the said Charles F. Harrow, and particularly the State Bank of Indiana. On February 14, 1850, The State Bank of Indiana recovered a judgment, in the District Court of Wapello county, against Charles F. Harrow for $2,519.25, on an indebtedness existing prior to 1846. On February 20, 1850, a general execution was issued upon said judgment, which was levied on the land in controversy and other lands, as the property of Charles F. Harrow, April 13, 1850, and advertised for sale June 1, 1850, and the execution was returned for want of time to sell. On the date last named a *venditioni exponas* was issued, directing the sale on that date, June 1, 1850, and was returned not sold for want of bidders. On October 2, 1851, a second *venditioni exponas* was issued, and thereunder the whole of the west half of the quarter section, including the fifteen acres, was sold November 13, 1851, to Hall & Wilson, for $800. On August 30, 1853, the sheriff by virtue of the sale conveyed said real estate to Hall & Wilson, and their deed was duly recorded the next day. At the May term, 1856, of the U. S. District Court for the District of Iowa, Hall & Wilson filed their petition against J. W. Caldwell and Harriet M. Harrow, Exec'rs. of Francis M. Harrow, then deceased, and his only heirs at law, Albert Harrow and Frances Harrow, who alone were notified and made defendants; these defendants appeared, answered, and, after a full hearing upon the merits of the case, it was adjudged (the relief being proper upon the pleadings and issues,) that the deed from Evans to Francis M. Harrow was void, because the real estate belonged to Charles F. Harrow, and the title was placed in the name of Francis M. Harrow to defraud the creditors of said Charles. That on the ———— day of November, 1864, Hall & Wilson conveyed the fifteen acres in controversy to the defendants herein.

It will be observed from the foregoing statement of the

respective bases of title, that the execution sale to Hall &
Wilson, under the judgment against Charles F.
Harrow, was made on November 13, 1851, with
the right of redemption for one year; while the
conveyance made by Francis M. Harrow to Abraham Davis,
was not made till November 27, 1852, just one year and four-
teen days after the sale to Hall & Wilson. The appellants
claim, under Code of 1851, Sec. 1947, then in force, that since
the one year and twenty days had not expired, Davis was a pur-
chaser with notice. That section is as follows: "The pur-
chaser of real estate on a sale on execution need not place any
evidence of his purchase upon record until twenty days after
the expiration of the full time of redemption. Up to that
time, the publicity of the proceedings is constructive notice of
the rights of the purchaser, but no longer." This section has
no application to the facts of this case, and as between these
parties. It applies to cases involving the rights of and has
the effect to make the proceedings constructive notice to, those
persons only who derive title from or claim their interest
through the judgment defendant. Here the plaintiffs derive
their title through Francis M. Harrow, while the judgment
and execution sale were against Charles F. Harrow. It is an
elemental principle, that judicial proceedings, whether they
are orders or steps taken in court, or transactions done out of
court pursuant to its orders or process, affect those only who
are parties to such judicial proceedings or are in privity with
them. These plaintiffs were neither parties nor privies to that
proceeding, and are not, therefore, charged with constructive
notice of them.

Again, it is claimed that the judgment of The State Bank
of Indiana against Charles F. Harrow was rendered before
the purchase by Davis, the plaintiffs' ancestor, from Francis
M. Harrow, and that, since under our law, a judgment was
and is a lien upon an equitable interest in land, as well as
upon the legal title, and since it is further conceded that
Charles F. Harrow was the equitable owner of the land for the
benefit of his creditors, then this judgment lien ante-dates the
plaintiffs' title, and is paramount to it. If this equitable title

*1. JUDICIAL SALE: constructive notice.*

in Charles F. Harrow had been of record, or if we leave out of view the want of notice to, and the good faith purchase by Davis in ignorance of it, the claim would probably be sound in theory.

But a judgment is not a lien upon an equitable interest in real estate in the sense to charge or affect a subsequent *bona fide* 2 JUDGMENT: purchaser without notice. This point was expressly lien of. so decided in *Bridgman & Co. v. McKissick & Bone*, 15 Iowa, 260, and we see no occasion to dissent from that ruling. See also the cases there cited, and *Miller v. Colville*, 21 Iowa, 139; *Wallace v. Bartle*, Ib., 350; *Parker v. Pierce*, 16 Iowa, 232. To hold otherwise would be to practically nullify our recording or registration statutes. For, if a judgment lien against one who had not the title of record, could overreach a title acquired in good faith from the person having such title apparent of record, then no person could purchase real estate with any confidence in his right to hold it. In this case, Francis M. Harrow had the title of record; Davis desired to purchase, and did buy in good faith, and paid his money. He could not know who *might* have an equitable interest in it, and no extent of examination of records could enable him to ascertain; and it is a veritable nullification of our recording acts to hold that he shall be bound by that which could not be ascertained by the records, and of which he had no notice in fact. Again, it is well settled that the holder of an equitable right or title, the evidence of which is not recorded, cannot set up such equity against the purchase of the legal title in good faith, for value, and without notice of the legal title. If the owner of such equitable title cannot make it available, *a fortiori*, the holder of a mere lien thereon cannot.

It is further and finally claimed that the judicial proceedings, whereby the conveyance by Evans to Francis M. Harrow 3. PARTIES: was set aside as void, and the title declared to be who are not in Charles F. Harrow, destroys the basis or breaks bound by an adjudication. a link in the chain of plaintiffs' title, and leaves them without any support. They were neither parties nor privies to that judicial proceeding. This claim is conclusively

answered by the maxim, and most obvious principle of justice, that no man ought to be bound by proceedings to which he is a stranger. 1 Greenl. on Ev., § 522.

AFFIRMED.